## KANAKA NIAN, IN RE.

ALIENS.—NATURALIZATION.—WHO ELIGIBLE.—Under section 2169 Revised Statutes U. S. only free white persons and persons of African nativity are eligible for naturalization, and this includes only members of the Caucasian or white race, and of the African races.

ID.—ID.—HAWAIIANS.—A native of the Sandwich Islands, belonging to the Hawaiian race, is a Polynesian, belonging to the Malay races, and as such is not eligible to citizenship.

ID.—ID.—PROOF OF COMPETENCY.—A person who had lived in the United States for six years, but could not read or write the English language, who did not know the name of the President of the United States, but spoke of George Washington as President, who had read the constitution of the United States in his own language and who promised to obey all the laws of the United States, does not show under Sec. 2165 Revised Statutes U. S., that he is competent to become a citizen of the United States.

CONSTRUCTION OF STATUTES.—IMPLIED REPEAL.—LEGISLATIVE CONSTRUCTION.—The statute declaring that hereafter no Chinese should be naturalized, and that all acts conflicting therewith were repealed, was not an implied repeal of section 2169 Revised Statutes, and did not such a legislative construction of said section, as would be binding on the court.

ALIENS.—NATURALIZATION.—DISCRETION OF COURT.—The third division of section 2165, Revised Statutes U. S., imposes upon the court the duty of determining from his conduct in evidence and from his statements, whether he is a man of good moral character, attached to the principles of the constitution of the United States, and in doing so the court may consider whether the applicant has sufficient intelligence and knowledge to assume understandingly the duties of citizenship.

APPLICATION in the supreme court of Kanaka Nian to be admitted to citizenship. The opinion states the facts.

*Mr. Le Grande Young,* for the petitioner.

*Mr. Orlando W. Powers, contra.*

ZANE, C. J.:

In this cause counsel appeared, and were heard for and against the admission of the applicant. It appeared

from the statement of the applicant under oath that he was a native of the Hawaiian islands, that his ancestors were Kanakas. In appearance he was of Malayan or Mongolian complexion, a shade lighter than the average of his race. He could not read or write the English language, but stated that he had lived in Utah territory six years, and that he had read the constitution of the United States in his own language; that the Hawaiians have a king, and the United States have a president. He was unable to mention the name of the president of the United States, but spoke of George Washington as president. He said he would obey all the laws of the United States, and presented his first papers. On his statements, assuming residence proven by witnesses, ought the court admit him to citizenship? Prior to the act of July 14, 1870, amending the naturalization laws, the language of the law was that any alien being a free white person may be admitted to citizenship. After the adoption of the thirteenth and fourteenth amendments to the national constitution, the former prohibiting slavery, and the latter declaring who shall be citizens, congress in the act above referred to, amended the naturalization laws so as to extend them to the African. The language of the law, as amended, is : "The provisions of this title shall apply to aliens being free white persons, and to aliens of African nativity, and to persons of African descent." Rev. St. 1878, § 2169. This law limits naturalization to persons of the white or African races.

The first question is, do the native inhabitants of the Hawaiian islands belonging to the white or African races? Blumenbach classifies the human family into five varieties, viz.: the Caucasian, Mongolian, Ethiopian, Malay, and American. Cuvier reduced the five classes of Blumenbach to three, viz., the Caucasian, Mongolian, and Æthiopian, treating the Malay and American as subdivisions of the Mongolian. Jacquinot does the same. Prof. E. B. Tylor, in his article on Anthropology in the Encyclopædia Britannica, (9th Ed.,) after noticing the divisions made by Blumenbach and Cuvier, approves as the best the classification of Prof. Huxley into Australians, Negroes, Mon-

gols, and Whites, dividing the whites into the fair whites and the dark whites. Among the Mongols he includes the Chinese, the Dyak-Malays, and the Polynesians. Prof. Van Rhyn, in American Cyclopedia, article Malayo-Polynesian Races and Languages, includes among those races the inhabitants of the Hawaiian islands. Rev. J. F. Whitmee in a learned article, Polynesia, in Encyclopædia Britannica, (9th Ed.,) classifies the Polynesians into Negrito-Polynesians and Malayo-Polynesians, and among the latter places the Sandwich islanders. The highest authorities, therefore, class the Hawaiians among the Malay tribes. No authority on such subjects classifies them with either the Caucasian or the white races, or the Ethiopian or black races. Judge Sawyer says that he finds "nothing in the history of the country, in common or scientific usage, or in legislative proceedings, to indicate that congress intended to include in the term 'white person' any other than an individual of the Caucasian race." In re *Ah Yup*, 5 Sawy., 155. Reference is made to 22 U. S. St. at Large, p. 61, § 14, "that hereafter no state court or court of the United States shall admit Chinese to citizenship, and all laws in conflict with this act are hereby repealed." In mentioning the Chinese as excluded it is claimed that congress intended to exclude all other races. There is a general rule of construction of statutes that if a portion of a number of classes are included by name, all others are excluded; such a rule of construction for this section would admit to citizenship the aliens of all other races, — an effect that congress unquestionably never intended. Some courts had admitted Chinese to citizenship, and this section was evidently made to prevent such naturalization and to remove all doubt. We are of opinion that the law authorizes the naturalization of aliens of the Caucasian or white races and of the African races only, and all other races, among which are the Hawaiians, are excluded.

The admission of the applicant to citizenship was opposed, also, on the ground that he did not appear to be possessed of sufficient intelligence to become a citizen; that his intellect and conscience were not sufficiently en-

lightened. The second division of section 2165 of the
Revised Statutes requires that the applicant shall declare
on oath before the court that he will support the constitu-
tion, and that he absolutely and entirely renounces and
abjures all allegiance and fidelity to every foreign prince,
potentate, state, and sovereignty whatever, and particularly
to the one of which he was before a citizen or subject.
His feeling of obligation to his adopted country must be
paramount to such feeling for any other. His allegiance
must be undivided. The third division of the above
section is as follows: "It shall be made to appear to the
satisfaction of the court admitting such alien that he has
resided within the United States five years at least, and
within the state or territory where such court is at the
time held one year at least; and that during that time he
has behaved as a man of good moral character, attached to
the principles of the constitution of the United States, and
well disposed to the good order and happiness of the same.
*     *     *" This provision imposes on the court the
duty of determining, upon the evidence, whether the
applicant has behaved during his residence as a man of
good moral character, attached to the principles of the
constitution, and well disposed to the good order and
happiness of the people of the United States. This statute
makes it the duty of the court to judge of the applicant's
moral character from his conduct in evidence, as well as of
his attachment to the constitution and his disposition
towards the good order, happiness, and welfare of the
people. The constitution places on the citizen the direc-
tion of the government—that government which should
protect human life, but may sacrifice it; that may
guard our liberties, or may be used to overthrow them;
that should secure our right to the pursuit of happiness,
and to property, but which may violate or destroy them.
The will upon which the welfare of the millions who are
now here, and who are to follow us, so largely depends,
should be intelligent and virtuous. The man intrusted
with the high, difficult, and sacred duties of an American
citizen should be informed and enlightened. He should
have sufficient intelligence to discriminate right from

wrong in political matters, and should possess a feeling of moral obligation sufficient to cause him to adopt the right. In the law quoted congress expressed an intention to admit to citizenship aliens of good moral character, attached to the principles of liberty and justice contained in the constitution, and desirous of the public good, and to exclude aliens who live immoral lives and disregard moral principles, who are in favor of despotism, and are indifferent to or opposed to those institutions upon which the welfare of all depends. They intended to exclude the immoral, those who are opposed to the principles of liberty and justice, or are in favor of anarchy and confusion. No alien who is not willing to support the constitution, and all laws pursuant to it, should be admitted to citizenship. No one should be admitted who has not sufficient intelligence to understand the principles of the government which may rest in part on his will.

It does not appear to the satisfaction of the court that the applicant understands the principles of the government of the United States or its institutions sufficiently to become a citizen. The application is denied.

JUDD, J., ANDERSON, J., and HENDERSON, J., concurred.