## BESSHO v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1910.)

No. 924.

ALIENS (§ 65*) — RIGHT TO NATURALIZATION — JAPANESE — CONSTRUCTION OF STATUTE.

In view of the provision of Immigration Act June 29, 1906, c. 3592, § 26, 34 Stat. 603 (U. S. Comp. St. Supp. 1909, p. 488), repealing related sections, but omitting from such repeal Rev. St. § 2169, as amended (U. S. Comp. St. 1901, p. 1333), which limits the privilege of naturalization to free white persons and persons of African nativity or descent, such section must be held to limit and control Act July 26, 1894, c. 165, 28 Stat. 124 (U. S. Comp. St. 1901, p. 1332), authorizing the naturalization of "any alien" 21 years or more of age who has served in the United States navy or marine corps as therein provided, and an alien of the Japanese race is not entitled to naturalization thereunder.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 65.*]

· Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

Petition for naturalization by Namyo Bessho. From an order denying such petition, he appeals. Affirmed.

T. Catesby Jones, for appellant.

L. L. Lewis, U. S. Atty. (R. H. Talley, Asst. U. S. Atty., on the brief).

Before GOFF, Circuit Judge, and BRAWLEY and CONNOR, District Judges.

GOFF, Circuit Judge. The appellant, a subject of the Mikado of Japan, filed his petition in the court below, in which he asked that he might be naturalized and admitted as a citizen of the United States. He claimed that he was entitled to the privilege so sought by him, because of the provisions of an act of Congress approved July 26, 1894 (chapter 165, 28 Stat. 124 [U. S. Comp. St. 1901, p. 1332]), reading as follows:

"Any alien of the age of twenty-one years and upward who has enlisted or may enlist in the United States navy or marine corps, and has served or may hereafter serve five consecutive years in the United States navy or one enlistment in the United States marine corps, and has been or may hereafter be honorably discharged, shall be admitted to become a citizen of the United States upon his petition, without any previous declaration of his intention to become such; and the court admitting such alien shall, in addition to proof

of good moral character, be satisfied by competent proof of, such person's serv-
ice in and honorable discharge from the United States navy or marine corps."

The appellee, answering the rule to show cause why the prayer of
the petition should not be granted, contended that petitioner was not
entitled to be declared a citizen, for the reason that section 2169, Rev.
St. U. S. (2d Ed. 1878)—U. S. Comp. St. 1901, p. 1333—limits the
privileges of naturalization to free white persons, and persons of Afri-
can nativity or descent, and that, as the petition admits that the ap-
plicant is a Japanese, his prayer should be denied. To this contention
of the appellee, the petitioner replied that the said section of the Re-
vised Statutes did not apply to, nor restrict, the provisions of the act
of July 26, 1894, under which his petition had been filed. The court
below overruled the objections of petitioner to the return of the ap-
pellee, sustained the insistence of the latter, refused the naturalization
asked for, and dismissed the petition. From this action of the court
the appeal now under consideration was sued out. Other proceedings
were had below, and are referred to in the assignments of error; but
as they are not essential to the disposition of the real question involved
—the right of the petitioner to naturalization—we do not deem it
necessary to allude to them.

We are to determine whether or not section 2169 of the Revised
Statutes is to be construed as limiting the terms of the act of July 26,
1894, so far as it relates to the naturalization of aliens, or whether
the broad provisions of the last-mentioned legislation should without
restriction be enforced.

A reference to the enactments of the Congress, relating to the ad-
mission of aliens as citizens of the United States, will enable us to as-
certain the legislative intent, and to properly construe the statutes as
they exist to-day pertaining to naturalization. Title 30 of the Revised
Statutes has incorporated therein all of the legislation relating to this
subject, in force at the time of the revision of 1873, and of the amend-
ments thereto of 1875. That title embraces sections 2165 to 2174, in-
clusive, of said Revised Statutes (U. S. Comp. St. 1901, pp. 1329–
1334). Of those sections is 2169, reading as follows:

"The provisions of this title shall apply to aliens being free white persons,
and to aliens of African nativity and to persons of African descent."

This section, as it was enacted in the revision of 1873, did not con-
tain the words "being free white persons," although they had been
included in the naturalization laws from the year 1802, down to that
date. But in the amendments of 1875, which were intended to correct
errors and supply the omissions of the previous revision, those words
were restored, and the section now reads as we have quoted it. The
attention of the legislative branch of the government was thus par-
ticularly called to the point we are now considering, and the action
then taken by it is most significant, and clearly indicates that the
Congress then intended to exclude all persons of the Mongolian race
from the privileges of the naturalization laws.

Counsel for appellant contends that even if this is the proper con-
struction of the laws relating to this subject, after the revision of 1875,
that such interpretation must now yield to the unrestricted terms of

the act of July 26, 1894. It must be admitted that the words used in that statute have a wide scope, and that they would, if not considered in conjunction with other legislation, sustain the claim of appellant that the Congress intended to give to "any alien" who possessed the qualifications described therein the right to be admitted as a citizen of the United States, in recognition of his services in the navy. But for reasons hereafter to be mentioned, we are not at liberty to ignore either the legislation in force when that statute was enacted, or the act of Congress passed subsequent thereto. Counsel insists that the act of 1894 is in no way controlled by section 2169 of the Revised Statutes, and that it should not be construed in connection with that legislation. Suppose we admit that but for the act of June 29, 1906, there would be force in this contention, would we not nevertheless, by virtue of that legislation, be compelled to refer to that section in order to determine what the legislative mind intended should be the law relating to naturalization subsequent to that enactment? That act is entitled "An act to establish a Bureau of Immigration and Naturalization, and to provide for a uniform rule for the naturalization of aliens throughout the United States." 34 Stat. 596, c. 3592 (U. S. Comp. St. Supp. 1909, p. 97). By this legislation a new and complete system of naturalization was adopted, all of the details of which together with the method of procedure, and the courts having jurisdiction of it, were set forth and designated, and all acts or parts of acts inconsistent with or repugnant to its provisions were repealed. In section 26 of that act is found an express repeal of sections 2165, 2167, 2168, and 2173 of the Revised Statutes (U. S. Comp. St. Supp. 1909, p. 488). These repealed sections are all included in title 30 of said Revised Statutes, and demonstrate beyond doubt that the Congress carefully considered all of the provisions of that title, and that it intended that the unrepealed sections thereof should still remain in force. Among those unrepealed is section 2169, which we thus find to be virtually re-enacted, and declared to be one of the rules under which future naturalizations are to be conducted. Another part of that title not repealed is section 2166, which relates to aliens who have enlisted in the armies of the United States, and provides that, an alien, of the age of 21 years and upward, who has enlisted, or may enlist, in the armies of the United States, and has been, or may be thereafter, honorably discharged, shall be admitted to become a citizen of the United States, upon his petition, under certain conditions therein mentioned. This section is quite similar to the act of 1894, providing for the naturalization of aliens who have enlisted in the navy—the act under which the appellant applied—which last-mentioned act is also left in full force and effect by the act of June 29, 1906.

In the light of this legislation, showing as it does the plain intention of the lawmaking power, must not the courts, under the usual rules of construction, hold that section 2169 of the Revised Statutes restricts the provisions of the enactments authorizing aliens who have enlisted in the navy, and in the army, to be admitted as citizens of the United States? If it appears from the petitions they file, from the applications they make to become citizens, or from the evidence offered, that they are not free white persons, or of African nativity, then such aliens, even

though they so enlisted and were thereafter honorably discharged, are not entitled to naturalization, as they are excluded from that privilege by the laws pertaining thereto.

A careful examination of the statutes relating to naturalization, commencing with Act Cong. April 14, 1802, c. 28, 2 Stat. 153, and ending with the enactment of July 14, 1870, c. 254, 16 Stat. 254, discloses the fact that such statutes during all that time had in view the purpose of preventing all aliens, not free white persons, from becoming citizens of the United States; in other words, all alien races except the Caucasian were excluded. From and including the act of July 14, 1870, to and inclusive of the act of June 29, 1906 (except the period between the revision of 1873, and the amendments thereto of 1875), the intention was to exclude from naturalization all aliens except those of the Caucasian and the African races. The history of the country through all the time thus indicated—to which we think we may with propriety allude—clearly develops the necessity for the legislation mentioned, and points out the purpose of the Congress in enacting it.

Counsel for appellant calls our attention to the fourteenth section of Act May 6, 1882, c. 126, 22 Stat. 61 (U. S. Comp. St. 1901, p. 1333), 1 Fed. Stat. Ann. p. 774, as indicating that the policy of the Congress was to exclude Chinese from becoming citizens, but not to prevent other aliens of the Mongolian race from being naturalized. We are unable to agree to this view of that act. The section referred to was evidently incorporated in the act mentioned to dispel a doubt entertained in some sections as to the sufficiency of the legislation on the subject of naturalization then in force, to prevent Chinese from being admitted as citizens. The title of the act is "An act to execute certain treaty stipulations relating to Chinese," and the preamble reads as follows:

"Whereas in the opinion of the government of the United States the coming of Chinese laborers to this country endangers the good order of certain localities within the territory thereof."

The fourteenth section reads thus:

"That hereafter no state court or court of the United States shall admit Chinese to citizenship; and all laws in conflict with this act are hereby repealed."

Surely there can be no serious contention concerning the ineligibility of Chinese to be naturalized under the statutes existing when this act became a law. The courts had theretofore considered such applications and rejected them. In re Ah Yup, 5 Sawy. 155, Fed. Cas. No. 104; In re Camille (C. C.) 6 Fed. 256. The Supreme Court, in Fong Yue Ting v. U. S., 149 U. S. 698, 716, 13 Sup. Ct. 1016, 1023 (37 L. Ed. 905), said:

"Chinese persons not born in this country have never been recognized as citizens of the United States, nor authorized to become such under the naturalization laws."

The court below did not err in holding that appellant was not entitled to naturalization as a citizen of the United States.

Affirmed.