## IN THE MATTER OF THE APPLICATION OF ALFRED FLORES OCAMPO FOR NATURALIZATION.

### December 30, 1916.

1. *Aliens—Naturalization:* Section 2169 of the Revised Statutes was not repealed by the Act of June 29th, 1906, "to establish a uniform rule of naturalization," etc.

2. *Same—Same:* Section 30 of the Act of June 29th, 1906, authorizes the naturalization of the class of persons specified therein by applying to them all the applicable provisions of the laws providing for the naturalization of aliens, and relieving them from the necessity of renouncing foreign allegiance.

3. *Same—Same:* That one does not come within the classes of persons designated in section 2169, does not make it *inapplicable* to him. It applies to and forbids his naturalization unless he does come within one of the classes specified.

4. *Same—Same:* It is no answer to say that the section applies to aliens, and that the applicant is not an alien. It is by virtue of the provisions of the laws for the naturalization of aliens, that he must be admitted, if at all.

5. *Same—Same:* Section 30 itself applies all the provisions of the naturalization law including section 2169 of the Revised Statutes to the persons specified therein.

6. *Same—Same—Filipinos:* A native of the Philippine Islands, of the Filipino race, being neither a white person nor of African nativity or descent, is not eligible to citizenship under our naturalization laws.

*Naturalization:* Hearing on petition.

*Alfred Flores Ocampo,* petitioner, *pro se.*

VAUGHAN, J. Alfred Flores Ocampo, a Filipino, born January 27, 1888, in the Philippine Islands, where he had lived prior to coming to Honolulu on November 14, 1907, seeks to be admitted to citizenship under section 30 of the Naturalization Act of June 29, 1906.

Is he eligible? Does the law authorize that he be admitted to citizenship? He may be admitted unless sec-

tion 2169 of the Revised Statutes of 1878 applies in his case and forbids.

The decision of the question is not free from embarrassment. This court has held in the case of *Marcos Solis,* in an opinion rendered by Judge Clemons, for whose opinions the writer has great respect, "that under section 30 of the Act of June 29th, 1906, a Filipino, a native and citizen of the Philippine Islands, is eligible to citizenship in spite of the provision of Rev. Stat. sec. 2169, limiting naturalization to aliens who are free white persons or of African nativity or descent.

The opinion of Attorney General Bonaparte, given July 10th, 1908, and the opinion of Justice Gould, of the Supreme Court of the District of Columbia, in the *Lopez* case, are cited to support the decision of the court; and they certainly do sustain it as far as the authority of the precedent can. On the other hand directly the contrary has been held by Judge Thompson of the United States District Court for the eastern district of Pennsylvania in the *Alverto* case, 198 Fed. 688, which has been cited with approval and followed in a short opinion by Judge Hand, in the *Lampitoe* case, 232 Fed. 382.

Let us examine the question. The authority of the courts to grant citizenship to those who are not citizens of the United States, whether aliens or inhabitants of possessions subject to the sovereign jurisdiction of the United States, owing allegiance thereto, is derived from and limited by the provisions of the naturalization laws. From the passage of the first naturalization act down to 1870 our laws permitted none to be admitted to citizenship except "free white persons." See *in re Ah Yup,* 1 Fed. Cas. No. 104. In 1870 an Act was passed containing the following provision:

"That the naturalization laws are hereby extended to aliens of African nativity and to persons of African descent."

As was stated by Judge Sawyer in the *Ah Yup* case:

"At the time of the amendment, in 1870, extending the naturalization laws to the African race, Mr. Sumner made repeated and strenuous efforts to strike the word 'white' from the naturalization laws or to accomplish the same object by other language."

All his efforts to do so failed, and the words limiting the aliens admissible to citizenship to white persons remained in the law as from the beginning, and the amendment simply extended the privilege of admission to citizenship to those of African nativity or African descent.

As was said by Judge Ward in *United States v. Balsara,* 180 Fed. 694:

"The revisers of the laws of the United States whose revision was adopted at the first session of the Forty-third Congress, 1873 to 1874, reported (section 2169, title 30), on the subject of naturalization in the following words: 'The provisions of this title shall apply to aliens of African nativity and to persons of African descent.' As the revisers were not authorized to change the law, the omission of the words 'free white persons' was evidently an oversight and it was corrected by Act Feb. 18, 1875, c. 80, 18 Stat. 318, entitled, "An Act to correct errors and to supply omissions in the Revised Statutes of the United States' as follows: 'Sec. 2169 is amended by inserting in the first line after the words 'aliens' the words 'being free white persons and to aliens.' "

It will thus be seen that when from some cause the revisers omitted the words "free white persons," Congress restored them by express enactment, and as a result the Revised Statutes of 1878 contain under the title "Naturalization" the following:

"Section 2169. The provisions of this title shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent."

The uniform construction given by the courts to section 2169 has been that it forbids the granting of citizenship to any except free white persons and to those of African

descent or nativity.    Numerous decisions have been rendered by the courts in which those who were not white persons nor of African descent nor of African nativity were denied citizenship.    Those of Chinese, the Malay, the Japanese, the Indian and the Hawaiian races were denied on account of section 2169. . Even the half white and half Indian, born in America, in British Columbia, was denied on account of that section.

As to the Chinese, see the following cases: *In re Ah Yup*, 1 Fed. Cas., No. 104 (1878); *In re Gee Hop*, 71 Fed. 274 (1895); *In re Po*, 28 N. Y. S. 383 (1894).

As to the Japanese, see: *In re Saito*, 62 Fed. 126, (1894); *In re Takuji Yamashita*, 30 Wash. 234, 70 Pac. 482, 59 L. R. A. 671 (1902).

As to the Hawaiian, see: *In re Kanaka Nian*, 6 Utah, 259, 21 Pac. 993, 4 L. R. A. 276 (1889).

As to the Indian, see: *In re Camille*, 6 Fed. 256 (1880); *In re Burton*, 1 Alaska, 111, (1900).

[1] On June 29, 1906, H. R. 15442, 34 Stat. 596, "An Act to provide for a uniform rule of Naturalization of Aliens throughout the United States, and to establish the Bureau of Naturalization," having passed both houses of Congress, was approved by the President and became a law, superseding all laws on the subject in conflict with it. Was section 2169 of the Statutes repealed by the Act?    At the time it was passed the Congress was familiar, it must be presumed, with the effect of section 2169, and the construction given to it by the courts.    All the opinions referred to in the foregoing had been published in the reports at the time.    After a careful examination of the Congressional Record during the time the bill was before Congress, I have not found any mention of section 2169 or of the decisions relating thereto.    It is not mentioned in the Act. Section 26 of the Act expressly repeals sections 2165, 2167, 2168 and 2173 of the Revised Statutes, and section 39 of

Chapter 1012 of the Statutes at Large for the year 1903, 32 Stat. 1222, "and all Acts and parts of Acts inconsistent with or repugnant to the provisions of this Act."

As was said by Judge Goff, in *Bessho v. U. S.*, 178 Fed. 245:.

"By this legislation, (referring to the Act of June 29, 1906), a new and complete system of naturalization was adopted, all of the details of which together with the method of procedure, and the courts having jurisdiction of it, were set forth and designated and all Acts or parts of Acts inconsistent with or repugnant to its provisions were repealed. In section 26 of that Act is found an express repeal of sections 2165, 2167, 2168 and 2173 of the Revised Statutes. These repealed sections are all included in title 50 of said Revised Statutes, and demonstrate beyond doubt that Congress carefully considered all the provisions of that title and that it intended that the unrepealed sections thereof should still remain in force. Among those unrepealed is section 2169, which we thus find to be virtually re-enacted, and declared to be one of the rules under which future naturalizations are to be conducted."

Evidently Congress did not consider section 2169 inconsistent with or repugnant to any of the provisions of the Act. It repealed the sections immediately preceding it and one a few numbers succeeding it, but left 2169; and was so careful to be certain to repeal all Acts and parts of Acts inconsistent with or repugnant to the Act, that it used express words though it was unnecessary to do so.

In some cases the courts have expressly held that section 2169 was not repealed by the Act of June 29th, 1906, United States v. Balsara, 180 Fed. 649, 103 C. C. A. 660; *Bessho v. United States*, 178 Fed. 246, 101 C. C. A. 605. In others, the question is not noticed, but the decisions assume that it was not repealed. *In re Buntaro Kumagai*, 163 Fed. 922; *In re Knight*, 171 Fed. 299.

The effect of leaving section 2169 unrepealed was virtually to re-enact it, as is stated by the court in the *Bessho*.

case, supra.  So that the case stands as if the Act of June
29th, 1906, contained section 2169 as one of its provisions,
declaring,

"The provisions of this Act shall apply to aliens being
free white persons and to aliens of African nativity and to
persons of African descent."

It is claimed, however, that section 2169 limits the nat-
uralization of *aliens* to free white persons and to persons
of African nativity or descent, and that it has no applica-
tion to any persons except *aliens*; and that section 30 of
the Act of June 29th, applies to a class of persons who are
*not aliens,* and provides for their naturalization    That is
true, but how does section 30 provide for the naturalization
of this class of persons, which it authorizes?    By applying
to such persons all the applicable provisions of the laws
providing for the naturalization of aliens.

[2], [3], [4], [5] Is not section 2169 of the Revised
Statutes an applicable provision of Naturalization laws?
The very language of it makes it read itself into every pro-
vision of the naturalization laws.    None of the provisions
of the naturalization laws apply to any except free white
persons and those of African descent or nativity.

In the *Lopez* case Justice Gould said:
"But section 2169 is not applicable to petitioner.    He is
not an alien nor is he of African nativity or descent."
He should have added, nor a white person.  But Justice
Gould erred in holding that these facts made section 2169
inapplicable to the petitioner.    That one does not come
within the classes of persons designated in section 2169,
does not make it *inapplicable* to him.    It applies, and for-
bids his naturalization unless he does come within one of
the classes therein specified.    It is no answer to say that
the section applies *to aliens,* and that the petitioner is not
an alien.    It is by virtue of the provisions of the laws made
for the naturalization of aliens, into every one of which

by its very terms section 2169 reads itself, that the petitioner for naturalization, claiming to come within the class of persons designated in section 30 of the Act of June 29th, 1906, must be admitted if at all.  Section 30 itself applies all the applicable provisions of the laws governing the naturalization of aliens to the class of persons whose naturalization it authorizes in the same manner as aliens except that they are not required to renounce allegiance to any foreign sovereignty, shall make their declarations of intention to become citizens of the United States at least two years prior to admission, and their residence within the jurisdiction owing allegiance to the United States is regarded as residence within the United States within the meaning of the clause requiring five years' residence.

If section 2169 of the Revised Statutes does not limit the class of persons authorized by section 30 of the Act of June 29th, 1906, to be naturalized, then there is no limitation.  Those of the Chinese, the Japanese and the Malay, as well as the Filipino races, "all persons not citizens who owe permanent allegiance to the United States, and who may become residents of any State or organized Territory of the United States," may all come in and be naturalized under section 30.

. If section 30 takes the Filipino out of the operation of section 2169, it takes out all other races.

Did Congress have any such purpose in the incorporation of that section in the Naturalization Act?  I do not think so.

Let us examine a little further into the matter.  The Act of June 29th, 1906, was passed for the purpose of restricting rather than increasing naturalization.

The language of section 30 was not in the bill when it was introduced nor when it passed the House.  It was put in by an amendment offered by Senator Foraker, who said at the time:

"I offer this amendment which simply provides that when a Porto Rican comes to the United States he may stand equally as favorable before the naturalization laws of the United States as the Spaniard or any other alien, and may become a citizen of the United States. The thing that stands in his way now is that he has no allegiance to any foreign potentate or power to renounce, and this simply opens to him a way to become a citizen if he comes here." See Congressional Record 59th Congress, 1st Session, vol. 40, part 10, page 9360.

It is evident that such was the sole purpose of the amendment which became section 30 in the Act. It reads as follows:

"Sec. 30. That all the applicable provisions of the naturalization laws of the United States shall apply to and be held to authorize the admission to citizenship of *all persons not citizens* who owe permanent allegiance to the United States, and who may become residents of any State or organized Territory of the United States, with the following modifications: The applicant shall not be required to renounce allegiance to any foreign sovereignty; he shall make his declaration of intention to become a citizen of the United States at least two years prior to his admission; and residence within the jurisdiction of the United States, owning such permanent allegiance, shall be regarded as residence within the United States within the meaning of the five years' residence clause of the existing law."

There was but little discussion upon the amendment, which was agreed to without objection. And the bill was further amended by inserting the words, "and Porto Rico" after Alaska in the section conferring jurisdiction on courts, so as to confer jurisdiction on the United States District Courts in Porto Rico as well as those of the other Territories, to grant naturalization, the author of this last amendment, Senator Mallory, of Florida, saying at the time, that he would not go so far as to exclude the courts of the Philippine Islands. Can it be doubted that if there had been any effort to repeal section 2169 or to make it

inapplicable to the class of persons authorized by section 30 to be naturalized, there would have been opposition and discussion?

[6] Does the section provide for the naturalization of persons who owe permanent allegiance to the United States or persons who do not owe such permanent allegiance? It reads, "all persons not citizens who owe permanent allegiance to the United States." The language has been construed to mean persons *who owe permanent allegiance to the United States, who are not citizens;* and the clause, "owing such permanent allegiance," in the last sentence of the section, and other circumstances support such construction. Do the citizens of the Philippine Islands owe *permanent* allegiance to the United States? It is unnecessary to go into the discussion of the question I do not question in the least the correctness of the decisions of the Supreme Court of the United States thereon. But, if the citizens of the Philippine Islands come within the meaning of the words "persons not citizens who owe permanent allegiance to the United States," in my opinion section 30 does not authorize the naturalization of any of them except those who are free white persons or of African nativity or descent, because section 2169 of the Statutes forbids.

Congress has passed various Acts providing for the naturalization of various classes of persons, those who have served in the Navy and Army, and the Marine Corps; and in every instance where the question has been before the courts, it has been held that section 2169 was a limitation upon the class of persons provided for. *Bessho v. U. S.,* 178 Fed. 245; *In re Knight,* 171 Fed. 299; *In re Buntaro Kumagai,* 163 Fed. 922. With this fact in mind it is all the more evident, as was said by Judge Thompson, in the *Alverto* case, supra, "If Congress had not intended its provisions (section 2169) to apply to section 30 of the Act of 1906, such intention would naturally appear in the Act."

There is nothing in section 2169 of the Statutes inconsistent with or repugnant to section 30 of the Act; and the latter section can be construed in harmony with the former, and it should therefore be so construed.    I am therefore of the opinion that section 30 does not authorize the naturalization of any of the class of persons specified therein unless they are free white persons or of African nativity or descent.

The petitioner does not come within the classes of persons designated and his application is denied.

———

· *Contra*: *In re Solis*, ante, p. 686; *In re Bautista*, 245 Fed. 765 (Morrow, J.).    As to reversal of earlier decisions of same court, see *United States v. Hoshi*, 3 U. S. Dist. Ct. Haw. 439 (Woodruff, J.), *United States v. Ishibashyi, Id.*, 517 (Robertson, J.).