Application by San C. Po for naturalization under the laws of the United States. Denied.

Samuel S. Hatt, for petitioner.

DANAHER, J. San C. Po, an alien, petitions that he may be admitted to become a citizen of the United States. It appears

that he was born at Bassien, in British Burmah, formerly a part of the Burman empire, situated in the southeast of Asia. In color he is dark yellow. He came to this country under the age of 18 years, to wit, at the age of 15. He has resided since that time, and for more than five years, within the United States, including the three years of his minority, and one year within the state of New York; and he asks to be admitted a citizen without having made the declaration of intention required by law to be made two years, at least, prior to his admission as a citizen. The petitioner appears to be a man of education. He was graduated at Colgate Academy, and is now studying medicine in the Albany Medical College. It is his intention to reside in and practice his profession in the United States, and to that end he has conformed to its customs, and has made himself acquainted with its laws and constitution, and, if there is no obstacle, it would give the court great satisfaction to grant his petition, and admit him to citizenship. The power of naturalization is exercised by state courts having common-law jurisdiction, and a clerk, and a seal, by authority of section 2165 of the Revised Statutes of the United States, but "the power to say when and under what circumstances aliens may become American citizens belongs to congress. Citizenship is a privilege which no one has a right to demand, and in construing the acts of congress upon the subject of naturalization the courts ought not to go beyond what is plainly written." In re Camille, 6 Fed. 259. Congress is vested with exclusive jurisdiction in the matter, and has declared that the provision of its naturalization laws shall apply only "to aliens being free white persons, and to aliens of African nativity and to persons of African descent." Rev. St. U. S. § 2169, enacted July 14, 1870. Subsequently, and in 1882, under the pressure of the Chinese question, congress enacted "that hereafter no state court or court of the United States shall admit Chinese to citizenship, and all laws in conflict with this act are hereby repealed." 22 Stat. 61, § 14. This seems to have been an unnecessary enactment, simply declaratory of the existing conditions, unless it was feared that some one might figure out that the Chinese were free white persons, or of African nativity or descent. In any event, naturalization is limited exclusively as above. Originally it was intended to limit naturalization to free whites, but under stress of the feeling generated by the late war, congress (in 1870) granted the boon of American citizenship to all native-born Africans from the Mediterranean to the Cape of Good Hope. A Congo negro but five years removed from barbarism can become a citizen of the United States, but his more intelligent fellowmen, native-born American Indians, and of the yellow races other than the Chinese, are denied the privilege. The Burmese are Malays, and under modern ethnological subdivisions are Mongolians (vide authorities cited; In re Kanaka Nian [Utah] 21 Pac. 993; In re Ah Yup, 5 Sawy. 157, Fed. Cas. No. 104), and are not, therefore, within the strict letter of the act of 1882, which prohibited the admission of Chinese to citizenship, for one can be a Mongolian and yet not be a Chinaman; but the petitioner falls squarely within

the provision of section 2169 of the United States Revised Statutes, which limits naturalization to free white persons, and to persons of African nativity and of African descent, for he is certainly neither. It is hardly worth while to cite authorities. In Re Ah Yup, 5 Sawy. 157, Fed. Cas. No. 104, the court said the words "white person," as used in the naturalization laws, mean a person of the Caucasian race, and do not include one who belongs to the Mongolian race; and the petitioner, a Chinaman, was there refused naturalization, and that in 1875, prior to the Chinese exclusion act of 1882. In Re Kanaka Nian (Utah) 21 Pac. 993, the petitioner, a native of the Hawaiian Islands, whose ancestors were Kanakas, was refused citizenship for the same reason. In Re Camille, 6 Fed. 259, the person was of half white and half Indian blood, and was denied citizenship because he was not a white alien, or a person of African descent or nativity. It has been decided that native-born Indians are not citizens, and cannot be naturalized under existing laws, which limit naturalization as above. See 7 Op. Attys. Gen. U. S. 746; 9 Op. Attys. Gen. U. S. 373; Elk v. Wilkins, 112 U. S. 94, 5 Sup. Ct. 41; In re Ah Yup, 5 Sawy. 157, Fed. Cas. No. 104. For the reason that petitioner is not an alien being a free white person, nor an alien of African nativity, nor a person of African descent, his petition to become a citizen of the United States is denied.