UNITED STATES v. BALSARA.

(Circuit Court of Appeals, Second Circuit. July 1, 1910.)

No. 186.

1. ALIENS (§ 61*)—NATURALIZATION—"FREE WHITE PERSONS."

"Free white persons," within Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), limiting the naturalization act (Act June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 97]) to such persons, includes members of the white, or Caucasian race, as distinct from the black, red, yellow, and brown races; and hence a Parsee is entitled to admission to citizenship.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122; Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 8, pp. 7446, 7447.]

2. STATUTES (§ 159*)—REPEAL BY IMPLICATION.

A statute inconsistent with or repugnant to a subsequent act is repealed by the latter, though not mentioned therein.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 229, 231; Dec. Dig. § 159.*

Repeal of statutes by implication, see note to First Nat. Bank v. Weidenbeck, 38 C. C. A. 136.]

3. ALIENS (§ 61*)—NATURALIZATION—STATUTES NOT REPEALED.

Naturalization Act June 29, 1906, c. 3592, 34 Stat. 596 (U. S. Comp. St. Supp. 1909, p. 97), did not impliedly repeal Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), limiting the naturalization provisions of such statutes to "free white persons."

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122; Dec. Dig. § 61.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Application by Bhicaji Franyi Belsara for admission to citizenship. From an order admitting applicant (171 Fed. 294), the United States appeals. Order affirmed.

Henry A. Wise, U. S. Dist. Atty., and A. S. Pratt and Carl E. Whitney, Asst. U. S. Attys.

Rounds & Shurman, for appellee.

Louis Marshall and Max J. Kohler, for Syrian interveners.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

UNITED STATES V. BALSARA.

Before COXE and WARD, Circuit Judges, and HAZEL, District Judge.

WARD, Circuit Judge. The Parsees emigrated some 1,200 years ago from Persia into India, and now live in the neighborhood of Bombay, to the number of about 100,000. They constitute a settlement by themselves of intelligent and well-to-do persons, principally engaged in commerce, and are as distinct from the Hindus as are the English who dwell in India. Balsara himself is a merchant of this city, entirely qualified for citizenship but for the fact, as the government contends, that he is not within section 2169 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 1333), which provides as to naturalization:

"The provisions of this title shall apply to aliens being free white persons and to aliens of African nativity and to persons of African descent."

Counsel have furnished us with such complete and interesting briefs that detailed consideration of the cases, laws colonial, state and federal and public documents referred to would extend this opinion to inordinate length. Therefore we will state our conclusions only.

The expression "free white persons" is found in all our naturalization acts since 1790, except for the brief period between 1873 and 1875, when they were omitted from the Revised Statutes. The government contends that the words must be construed to mean what the Congress which passed the first naturalization act in 1790 understood them to mean, and, no immigration being then known except from England, Ireland, Scotland, Wales, Germany, Sweden, France, and Holland, Congress must be taken to have intended aliens coming from those countries only. The consequence of this argument, viz., that Russians, Poles, Italians, Greeks, and others, who had not theretofore immigrated, are to be excluded, is so absurd that the government extends the intention of Congress to all Europeans.

On the other hand, counsel for Balsara insist that Congress intended by the words "free white persons" to confer the privilege of naturalization upon members of the white or Caucasian race only. This we think the right conclusion and the one supported by the great weight of authority. In re Ah Yup, 5 Sawy. 155, Fed. Cas. No. 104; In re Saito (C. C.) 62 Fed. 126; In re Camille (C. C.) 6 Fed. 256; Matter of San C. Po., 7 Misc. Rep. 471, 28 N. Y. Supp. 383; In re Buntaro Kumagai (D. C.) 163 Fed. 922; In re Knight (D. C.) 171 Fed. 297; In re Najour (C. C.) 174 Fed. 735; In re Halladjian (C. C.) 174 Fed. 834. Doubtless Congressmen in 1790 were not conversant with ethnological distinctions and had never heard of the term "Caucasian race" mentioned in some of the foregoing decisions. They probably had principally in mind the exclusion of Africans, whether slave or free, and Indians, both of which races were and had been objects of serious public consideration. The adjective "free" need not have been used, because the words "white persons" alone would have excluded Africans, whether slave or free, and Indians. Still effect must be given to the words "white persons." The Congressmen certainly knew that there were white, yellow, black, red, and brown races. If a Hebrew, a native of Jerusalem, had applied for naturalization in 1790, we cannot

believe he would have been excluded on the ground that he was not a white person, and, if a Parsee had applied, the court would have had to determine then just as the Circuit Court did in this case, whether the words used in the act did or did not cover him.

We think that the words refer to race and include all persons of the white race, as distinguished from the black, red, yellow, or brown races, which differ in so many respects from it. Whether there is any pure white race and what peoples belong to it may involve nice discriminations, but for practical purposes there is no difficulty in saying that the Chinese, Japanese, and Malays and the American Indians do not belong to the white race. Difficult questions may arise and Congress may have to settle them by more specific legislation, but in our opinion the Parsees do belong to the white race and the Circuit Court properly admitted Balsara to citizenship.

We think this view is confirmed by the legislation enacted between 1870 and 1875. Act July 14, 1870, c. 254, 16 Stat. 254, amending the naturalization laws, provided in section 7:

"That the naturalization laws are hereby extended to aliens of African nativity and to persons of African descent."

As negro immigration from Africa is and was totally unknown, the legislation can only be explained as a result of the sentiment created by the Civil War. The words "free white persons" were left in the law, indicating the intention to exclude other races than the African. The revisers of the laws of the United States, whose revision was adopted at the first session of the Forty-Third Congress, 1873, to 1874, reported (section 2169, title 30), on the subject of naturalization in the following words: "The provisions of this title shall apply to aliens of African nativity and to persons of African descent." As the revisers were not authorized to change the law, the omission of the words "free white persons" was evidently an oversight and it was corrected by Act Feb. 18, 1875, c. 80, 18 Stat. 318, entitled, "An act to correct errors and to supply omissions in the Revised Statutes of the United States" as follows:

"Sec. 2169 is amended by inserting in the first line after the word 'aliens' the words 'being free white persons and to aliens.'"

Of course, between 1873 and 1875, Congress having adopted the Revised Statutes, any alien was eligible to naturalization. In re Ah Chong (C. C.) 2 Fed. 733, 739. If in 1875, when they were amended, Congress had intended the privilege of naturalization to be restricted to Europeans and Africans, as contended by the government, it would presumably have inserted a more accurate expression than "free white persons" in the section. On the other hand, if it had intended the law to apply to all aliens except those expressly excluded, it would have repealed the section altogether, leaving section 2165 to apply as it reads to all aliens.

Counsel for certain Syrian interveners as amici curiæ contend that the words "free white persons" were used simply to exclude slaves and free negroes. If so, of course, all other aliens were included. This is enforced by the further argument that the act of June 29, 1906 (Act

June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 97]), repealed section 2169, Rev. St. U. S., by necessary implication, and that all aliens except those expressly excluded, like the Chinese, are now eligible to citizenship. The act of 1906 does provide for a uniform rule for the naturalization of aliens throughout the United States. Section 4, regulating proceedings, like section 2165, Rev. St. U. S., provides "that an alien may be admitted to become a citizen of the United States in the following manner and not otherwise." But section 2169, supra, limited the application of the whole title to persons being free white persons or of the African race, and section 26, the repealing clause of the act of 1906, makes no mention of section 2169. Of course, if the latter is inconsistent with or repugnant to the act, it is repealed, though not mentioned. But we do not think it is. Indeed, the form annexed for declaration of intention requires the applicant to state his color as well as his complexion. It seems to us incredible that Congress could have intended to make such a departure from existing law by implication merely.

The order is affirmed.