## In re ALVERTO.

(District Court, E. D. Pennsylvania.    September 24, 1912.)

### No. 7233.

1. ALIENS (§ 61*)—NATURALIZATION—STATUTES—REPEAL.
   Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), providing that the naturalization law shall apply to aliens who are free white persons and aliens of African nativity or descent, was not repealed by Naturalization Act (Act June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1911, p. 528]).
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122; Dec. Dig. § 61.*]

2. ALIENS (§ 61*)—NATURALIZATION—MILITARY SERVICE.
   Service in and honorable discharge from military service of the United States does not extend the right of naturalization to those persons who are neither free white persons nor persons of African nativity or descent, and therefore not entitled to naturalization under Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333).
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122; Dec. Dig. § 61.*]

3. ALIENS (§ 61*)—NATURALIZATION—PHILIPPINES.
   Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), limiting naturalization to aliens who are free white persons and aliens of African nativity or descent, was applicable to Naturalization Act (Act June 29, 1906, c. 3592, 34 Stat. 606 [U. S. Comp. St. Supp. 1911, p. 544]), § 30, providing that the naturalization laws shall apply to authorize the admission to citizenship of all persons not citizens who owe allegiance to the United States, and who may become residents of any state or organized territory of the United States on certain conditions; and hence a citizen of the Philippine Islands who ethnologically was one-fourth white and three-fourths brown or Malay could not be naturalized.
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122; Dec. Dig. § 61.*]

Petition for naturalization by Eugenio Alverto.    Denied.

Jerome C. Shear, Special Naturalization Examiner, for the United States.

THOMPSON, District Judge.    The facts adduced at the hearing are as follows:

The petitioner is a native of the Philippine Islands.    His paternal grandfather was a Spaniard, who settled in the Philippines while those islands were under the dominion of Spain, and married a na-

---

tive Philippino woman. The petitioner's father, who was born in the Philippines, also married a native Philippino woman, and was a Spanish subject prior to the cession of the Philippine Islands to the United States by the treaty of Paris. Act July 1, 1902 (32 Stat. at L. 691, c. 1369), providing for the administration of the Philippine Islands, declared that:

"All inhabitants of the Philippine Islands continuing to reside therein, who were Spanish subjects on the 11th day of April, 1899, and then resided in said islands, and their children born subsequent thereto, shall be deemed and held to be citizens of the Philippine Islands, and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the crown of Spain in accordance with the provisions of the treaty of peace between the United States and Spain, signed at Paris December 10th, 1898."

The applicant on April 11, 1899, was a Spanish subject residing in the Philippine Islands, and under the terms of the act became a citizen of the Philippine Islands. At the time of the hearing he had served continuously for seven years as an enlisted man in the United States navy, had been honorably discharged under his first enlistment, and was serving under a second.

Section 30 of the Naturalization Act of June 29, 1906 (34 Stat. 606, c. 3592 [U. S. Comp. St. 1911, p. 544]), provides as follows:

"All the applicable provisions of the naturalization laws of the United States shall apply to and be held to authorize the admission to citizenship of all persons not citizens who owe permanent allegiance to the United States, and who may become residents of any state or organized territory of the United States, with the following modifications: The applicant shall not be required to renounce allegiance to any foreign sovereignty; he shall make his declaration of intention to become a citizen of the United States at least two years prior to his admission; and residence within the jurisdiction of the United States, owing such permanent allegiance, shall be regarded as residence within the United States within the meaning of the five years' residence clause of the existing law."

The applicant claims under the above section and under Act July 26, 1894 (28 Stat. 124, c. 165 [U. S. Comp. St. 1901, p. 1332]), as a provision of the naturalization laws applicable thereto. The latter act provides that:

"Any alien of the age of twenty-one years and upwards who has enlisted or may enlist in the United States navy or marine corps, and has served or may hereafter serve five consecutive years in the United States navy or one enlistment in the United States marine corps, and has been or may hereafter be honorably discharged, shall be admitted to become a citizen of the United States upon his petition, without any previous declaration of his intention to become such; and the court admitting such alien shall, in addition to proof of good moral character, be satisfied by competent proof of such person's service in and honorable discharge from the United States navy, or marine corps."

The question is whether the applicant is debarred by section 2169, Revised Statutes, as amended in 1875 (U. S. Comp. St. 1901, p. 1333), which provides:

"The provisions of this title shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent."

198 F.—44

[1] Section 2169 was not repealed by the Naturalization Act of June 29, 1906. United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660.

[2] The applicant's service in the navy does not affect his status under section 2169. It has been repeatedly held that service in and an honorable discharge from the military service of the United States does not extend the right of naturalization to those persons who are beyond its provision under section 2169. In re Buntaro Kumagai (D. C.) 163 Fed. 922; In re Knight (D. C.) 171 Fed. 299; Bessho v. United States, 178 Fed. 245, 101 C. C. A. 605. It is apparent, therefore, that, however commendable the service of the applicant in the navy, the provisions of law in relation to naturalization of persons in the army and navy were intended by Congress to grant to those serving in the army and navy, who were of the white or African races, exemption from the necessity of a previous declaration of intention and from the necessity of proving residence for five years within the United States, but were not intended to extend the benefit of the naturalization laws to those not coming within the racial qualifications.

[3] The applicant's service in the navy, therefore, has no bearing on the case, and it remains to be determined whether section 2169 is a provision of the naturalization laws applicable to section 30 of the Act of 1906.

Citizens of the Philippine Islands or of Porto Rico, while not citizens of the United States, are not aliens, and, prior to the passage of the Act of 1906, were not capable of becoming naturalized for two reasons: First, the naturalization laws of the United States applied only to aliens; and, second, they required a renunciation of former allegiance. Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 171, 48 L. Ed. 317. The effect of section 30 was to make applicable to citizens of the Philippine Islands and Porto Rico those provisions which had theretofore applied only to aliens. If the limitations of section 2169 apply to one provision of the naturalization laws, they must apply to all and consequently to section 30 of the Act of 1906. Section 2169 was intended to limit the application of the whole body of the naturalization laws to aliens being free white persons or of the African race. "Free white persons" includes members of the white, or Caucasian race, as distinct from the black, red, yellow, and brown races. United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660; In re Ah Yup, Fed. Cas. No. 104; In re Camille (C. C.) 6 Fed. 256; In re Knight, supra; In re Najour (C. C.) 174 Fed. 735. The use of the words "white persons" clearly indicates the intention of Congress to maintain a line of demarcation between races and to extend the privilege of naturalization only to those of the races named. In re Ah Yup, supra; In re Saito (C. C.) 62 Fed. 126; In re Buntaro Kumagai, supra. The petitioner is, ethnologically speaking, one-fourth of the white or Caucasian race and three-fourths of the brown or Malay race. In the case of In re Camille (C. C.) 6 Fed. 256, the applicant, a Canadian, with a white father and an Indian mother, was held not to be a white person. In the case of In re Knight the petitioner was born on a British

schooner in the Yellow Sea. His father was an Englishman, and his mother half Chinese and half Japanese. It was held that the petitioner was not a free white person, and therefore not entitled to naturalization. As was said in the Knight Case:

"Naturalization creates a political status which is entirely the result of legislation by Congress, and, in the case of a person not born a citizen, naturalization can be obtained only in the way in which Congress has provided that it shall be granted, and upon such a showing of facts as Congress has determined must be set forth. It must have been within the knowledge and foresight of Congress, when legislating upon this question, that members of other races would serve in the army and navy of the United States under certain conditions, and it must remain with Congress to determine who of this class can obtain, under the statutes, the rights of a citizen of the United States."

Section 4 of the act provides that "an alien may be admitted to become a citizen of the United States in the following manner and not otherwise."

The Naturalization Act of 1906 expressly repealed many of the then existing provisions of law in relation to naturalization. Section 2169 was not repealed, and, if Congress had not intended its provisions to apply to section 30 of the Act of 1906, such intention would naturally appear in the act. As it has not excepted section 30 of the act from the provisions of section 2169, Revised Statutes, the latter section must be held to be an applicable provision of the naturalization laws.

I am therefore of the opinion that Congress did not intend to extend the privilege of citizenship to those who had become citizens of the Philippine Islands under the Act of 1902, unless they were free white persons or of African nativity or descent.

The application is denied.