## IN THE MATTER OF MARCOS SOLIS, A PETITIONER FOR NATURALIZATION.

### March 25, 1916.

*Aliens—Naturalization—Persons eligible; Filipinos:* Under section 30 of the Act of June 29, 1906, 34 Stat. 596, a Filipino, native and citizen of the Philippine Islands, is eligible to citizenship in spite of the provision of Rev. Stat. sec. 2169, limiting naturalization to aliens who are free white persons or of African nativity or descent.

*Petition for naturalization.*

*Marcus Solis,* petitioner, *pro se.*
*H. W. Vaughan,* U. S. District Attorney, opposed.

CLEMONS, J.    The petitioner Marcos Solis, born in the Philippine Islands October 1, 1892, and a citizen thereof, owing permanent allegiance to the United States, seeks to be made an American citizen.    On the hearing of his peti-

tion, he appeared to be in all ways qualified as a person honorably discharged from service in the Navy, under the act of June 30, 1914, 38 Stat. 395; and no question was made as to his qualifications except for the district attorney's contention, in reliance upon the decision in the case of *In re Alverto,* 198 Fed. 689, that Filipinos owing allegiance to the United States are not eligible to citizenship, because, under Rev. Stat. sec. 2169, that privilege is open only to free white persons and persons of African nativity or descent.

But the error of the *Alverto* decision is apparent, though the court's opinion is persuasive and well reasoned from its own premises. Section 2169, above, which was not repealed by the naturalization act of June 29, 1906, 34 Stat. 596, except so far as "inconsistent with or repugnant to the provisions of this act" (Id., sec. 26), limits the naturalization of *aliens* to free white persons and persons of African nativity or descent, and it has no application to any persons except aliens, but on the other hand, section 30 of the naturalization act of June 29, 1906, hereinafter quoted, applies to a class who are *not aliens* at all, but are a class in peculiar and close relationship with the United States. In other words, under section 2169 no alien can be naturalized who is not a white person or an African, and the petitioner here is not an alien to whom this section could apply. Or again, at the risk of repetition, section 2169 applies the provisions of the naturalization laws to aliens who are white persons or Africans, and that is all that it does; while section 30 applies the naturalization laws to an additional and entirely distinct and definite class of persons whom Congress has found it politic and no doubt just to favor.

As against the opinion in the *Alverto* case, there is first, the opinion given July 10th, 1908, 27 Ops. Atty. Gen. 12, by Attorney General Bonaparte, who assumed office almost contemporaneously with the taking effect of the statute in question; for he was appoined December 17, 1906, and

the act became effective August 28, of that year. Contemporary executive construction, and particularly by those in high office and having peculiar duties in relation to the administration of the Act, is of very persuasive authority. The Attorney General says, 27 Ops. Atty. Gen. 12, with regard to the application of the statute to a native Filipino:

"This section seems to have been formed expressly for the people of our insular possessions, who are there accurately described and to whom alone the section can refer."

It was this clear opinion that guided me on June 29th, 1912, in admitting to citizenship Paulino Netto, a person of half Filipino and half Spanish parentage.

And a still more recent authority, the decision of Justice Gould of the Supreme Court of the District of Columbia rendered December 13th, 1915, in the case of *In re Monico Lopez,* sustains the view of the Attorney General so succinctly and convincingly, that I am content to quote from it quite largely:

"The contention of the United States is that petitioner is debarred by Section 2169 R. S. U. S., which provides:

" 'The provisions of this title shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent.'

"It is argued that Section 30, of the act of June 29, 1906, and Section 2169 R. S. U. S. must be read together, and that the former Section applies only to persons who are designated in the latter, viz.: 'aliens being free white persons and to aliens of African nativity,' etc.

"The court is unable to agree with the contention of the Government. The language of Section 30, above quoted, is that:

" 'All the *applicable* provisions of the naturalization laws . . . shall apply to and be held to authorize the admission to citizenship of all persons not citizens who owe permanent allegiance to the United States, and who may become residents of any State or organized Territory of the United States.'

"But Section 2169 is not *applicable* to petitioner. He is not an alien nor is he of African nativity or descent.

"By the treaty with Spain, the Philippines were ceded to the United States on April 11, 1899. By the Act of July 1, 1902 (32 Stat. at Large, 691) inhabitants of the Philippines who were Spanish subjects on April 11, 1899, other than those who had elected to preserve their allegiance to Spain, were declared 'to be citizens of the Philippine Islands and as such entitled to the protection of the United States.' Four years later Congress, with the Act of 1902 before it, making Filipinos local citizens and with the knowledge that the Islands were being governed by the United States and that thereby its citizens owed allegiance to the United States, enacted Section 30, with the evident intention of providing means whereby such citizens could become citizens of the United States.

"In the case of *Fourteen Diamond Rings v. U. S.*, 182 U. S., 176, the Supreme Court, speaking of the Philippines, used this language:

" 'The Philippines thereby ceased, in the language of the treaty, 'to be Spanish'. Ceasing to be Spanish, they ceased to be foreign country. They came under the complete and absolute sovereignty and dominion of the United States, over which civil government could be established.

" 'The result was the same although there was no stipulation that the native inhabitants should be incorporated into the body politic and none securing to them the right to choose their nationality. *Their allegiance became due to the United States*, and they became entitled to its protection.'

"This decision was handed down December 2, 1901. Five years later, Congress provided a means whereby those persons described by the quoted language of the Supreme Court, owing allegiance to the United States, might become citizens thereof. To contend that this provision must be read in *pari materia* with a section relating to aliens and persons of African descent is to ignore the evident intent of Congress in extending citizenship to a definite and ascertained class of persons who were neither aliens nor of African descent.

"I am aware that in other jurisdictions, an opposite conclusion has been reached, but to my mind the above considerations are compelling and I will admit the petitioner to citizenship."

The present view of the government may perhaps be indicated by the following from the letter of the Commissioner of Naturalization dated February 15th transmitting in compliance with my request a copy of Justice Gould's decision:

"Request was made by this Department that steps be taken with a view to the review of the decision by the Court of Appeals of the District of Columbia, but the Department of Justice declined to take such action, and stated, in part, as follows:

" 'It is to be noted that in the case of *Lopez* the applicant had resided in this country since 1904, while in the *Alverto* case,  . . .  there appears to have been no showing that the applicant had ever resided in any state or organized territory of the United States, which, of course, is a prerequisite.' "

As regards any prejudice against the naturalization of any but white persons or Africans, Congress has done no extraordinary thing in here extending citizenship to those who may be other than of the classes just named; for, e. g., by the Organic Act providing a government for the Territory of Hawaii all who were citizens of the Republic of Hawaii at annexation but who by mere annexation were not made citizens of the United States, were collectively naturalized, even though the majority of them were neither white persons nor Africans, and even though some were Chinese, who under 22 Stat. 61, sec. 14, act of May 6, 1882, were not eligible.   See 23 Ops. Atty Gen. 509, also Van Dyne on Naturalization, 45, 318.

Let the petition be granted.

---

See *In re Ocampo,* post. decision of December 30, 1916.