### In re BHAGAT SINGH THIND.

(District Court, D. Oregon. October 18, 1920.)

No. 998.

**Aliens ⟨Key⟩61—Hindu lawfully entering admissible to citizenship.**

Rev. St. § 2169, as amended (Comp. St. § 4358), authorizing the naturalization of aliens who are "free white persons," *held* not repealed as to nations of India by Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), which by territorial delimitations excludes such persons from entry, and a high-caste Hindu, native of India, who lawfully entered prior to the passage of that act, and possesses the requisite qualifications, *held* entitled to admission to citizenship.

In the matter of the petition of Bhagat Singh Thind for admission to citizenship. Petition granted.

Thomas Mannix, of Portland, Or., for applicant.

V. W. Tomlinson, of Portland, Or., U. S. Naturalization Examiner.

WOLVERTON, District Judge. The applicant is a high-caste Hindu, born in Armitsar, Punjab, in the northwestern part of India. He is 28 years of age, and was admitted into this country on July 4, 1913,

at Seattle, Wash. He entered the army, and served therein for six months at Camp Lewis, and was accorded an honorable discharge; his character being designated by the officer granting the discharge as "excellent." He was acting sergeant at the time of his discharge.

The testimony in the case tends to show that, since his entry into this country, the applicant's deportment has been that of a good citizen, attached to the Constitution of the United States, unless it be that his alleged connection with what is known as the Gadhr party or Gadhr Press, a publication put out in San Francisco, and the defendants Bhagwan Singh and others, prosecuted in the federal court in San Francisco for a conspiracy to violate the, neutrality laws of this country, has rendered him an undesirable citizen. He was on friendly terms with Bhagwan Singh, Ram Chandra, and others who had to do with the Gadhr Press, and, after Bhagwan Singh's conviction, while the latter was on his way to the penitentiary at McNeil Island, met him at Portland, at the depot, and subsequently visited him at the penitentiary three or four times.

He stoutly denies, however, that he was in any way connected with the alleged propaganda of the Gadhr Press to violate the neutrality laws of this country, or that he was in sympathy with such a course. He frankly admits, nevertheless, that he is an advocate of the principle of India for the Indians, and would like to see India rid of British rule, but not that he favors an armed revolution for the accomplishment of this purpose. Obviously, he has modified somewhat his views on the subject, and now professes a genuine affection for the Constitution, laws, customs, and privileges of this country.

Were his allegiance to the laws and customs of this country dependent upon his protestations alone, I should not be inclined to give them credence. They are, however, strongly corroborated by disinterested citizens, who are most favorably impressed with his deportment, and manifestly believe in his attachment to the principles of this government. I have not attempted to analyze the testimony critically, because of its length, but, from a careful survey of it, I am impressed that his deportment here entitles him to become a citizen, unless it be that he is debarred from citizenship under the naturalization and immigration laws of Congress.

I am not disposed to discuss the question as one of first impression whether a high-class Hindu, coming from Punjab, is ethnologically a white person, within the meaning of section 2169 of the Revised Statutes, as amended (Comp. St. § 4358). I am content to rest my decision of the question upon a line of cases of which In re Mohan Singh (D. C.) 257 Fed. 209, In re Halladjian (C. C.) 174 Fed. 834, and United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660, are illustrative. I am aware that there are decisions to the contrary, but am impressed that they are not in line with the greater weight of authority.

A crucial question presented is whether the third section of the Immigration Act of Congress of February 5, 1917 (39 Stat. 874, 875 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b]), operates as a repeal of section 2169, R. S., in so far as it embraces the

words "white persons." Section 3 excludes Hindus from admission into this country by territorial delimitations. The act became effective May 1, 1917. Subsequently thereto, it became unlawful for a Hindu to enter the United States, and it may be confidently affirmed that no person who entered the United States unlawfully can be admitted to citizenship therein.

Bhagat Singh did not enter unlawfully. He came at a time when he had a right to enter, and was permitted to enter in pursuance of law. The act in question does not purport to disturb his present domicile here, nor does it impose any further duty upon him by which he may maintain such domicile. Neither does it require of him that he shall depart the country. Furthermore, I find nothing in the act that evinces an intendment that it should operate retrospectively; that is, to render his lawful entry presently unlawful. We may inquire, then, respecting the status of Hindus lawfully domiciled in this country. Shall they remain here as they please, without the privilege of becoming citizens, or shall they be deported whence they came? If the latter, how and when? As to these questions, the law is silent, unless section 2169 and the naturalization laws are still applicable.

Repeals by implication are not favored, and, unless there is manifest repugnancy between the later and the former act, the former must remain operative. The argument is that, as Congress eliminated the words "white persons" from the Immigration Act, the act in question, it must be inferred that it intended to eliminate these words also from section 2169, and thus to amend that section accordingly. This does not necessarily follow. Congress was dealing with the subject of immigration, and not of naturalization, and it may well be that Congress designed thenceforth to exclude Hindus from entry into the United States, and still permit such as were domiciled here the privilege of being naturalized. In this light, I see no repugnancy between the act and section 2169 and other naturalization regulations.

I see no analogy in this act to the Chinese Exclusion Act. To illustrate, by the sixth section of the Act of May 5, 1892 (27 Stat. 25, [Comp. St. § 4320]), it was made the duty of Chinese laborers within the limits of the United States at the time of the passage of the act, and who were entitled to remain therein, to apply to the collector of internal revenue of their respective districts, within one year, for certificates of residence; and it was further provided that any Chinese laborer who neglected or refused to comply with the provisions of the act, or who, after one year from its passage, was found within the United States without such certificate, should be deemed and adjudged to be unlawfully therein, and should be deported accordingly. This statute has been sustained, and the courts have held that the United States can forbid aliens coming within their boundaries, and expel them from their territory. Wong Wing v. United States, 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140.

So it has been held that a certificate issued to a Chinese laborer, under the fourth and fifth sections of the Act of May 6, 1882 (22 Stat. 58), as amended July 5, 1884 (23 Stat. 115), conferred upon him

no right to return to the United States of which he could not be deprived by a subsequent act of Congress. Chae Chan Ping v. United States, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068. This case is illustrative.

, The present act, however, does not deal with the Hindus and other races without the delimitations, other than to debar their further admission into this country. It does not require such as are here to depart, and, there being no manifest repugnancy between this and the naturalization laws, it must be concluded that Bhagat Singh is entitled to his naturalization.