## Petition of EASURK EMSEN CHARR.

(District Court, W. D. Missouri, W. D. April 16, 1921. On Rehearing, June 6, 1921.)

### No. 2453-M.

1. **Aliens ⬅61—Korean is not a "white person," within naturalization laws.**
   Generally speaking, free white persons, within the naturalization laws, are members of the white or Caucasian race, as distinct from the black, red, yellow, and brown races, and it clearly does not include a Korean, who is admittedly of the Mongol family.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, White Person.]

2. **Aliens ⬅65—Purpose of 1918 amendment to Naturalization Act was to relieve service men from delays in procedure.**
   The primary purpose of the amendment of Act June 29, 1906, § 4, subd. 7, which dealt with procedure for naturalization, not with eligibility, by Act May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352 [7]),

authorizing naturalization of Filipinos and Porto Ricans who had served in United States forces, and providing that any alien serving in such forces during the present war could be naturalized without the preliminary declaration, was to reward aliens who had entered the service by admitting them to citizenship without many of the slow processes, formalities, and strictness of proof required by the existing naturalization law.

**3. Aliens ⬤⟿65—Amendment of naturalization Act in 1918 did not authorize naturalization of Korean, who served in army.**

Act May 9, 1918, amending Act June 29, 1906, § 4, subd. 7 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352 [7]), so as to authorize naturalization of Filipinos and Porto Ricans who served in the military forces of the United States, and permitting naturalization of all aliens who had so served, without compliance with many formalities required of others, section 2 (section 4352aa) of which amending statutes repealed inconsistent acts, with the proviso that it should not repeal or enlarge Rev. St. § 2169 (Comp. St. § 4358), limiting naturalization to free white persons and persons of African descent, except as specified in subdivision 7, did not enlarge the right to naturalization, except in the cases of Filipinos and Porto Ricans, and therefore did not authorize the naturalization of a Korean, who had been honorably discharged after service in the United States army during the World War.

**4. Aliens ⬤⟿61—Naturalization Act of 1916 did not impliedly repeal restriction of naturalization to white persons.**

Rev. St. § 2169 (Comp. St. § 4358), restricting the right of naturalization to free white persons and persons of African descent, was not impliedly repealed by Act June 29, 1906, authorizing admission to citizenship of persons, not citizens, who owe allegiance to the United States, which was enacted to permit the naturalization of citizens of the Philippine Islands and of Porto Rico, who could not theretofore be naturalized, because the naturalization laws applied only to aliens and required a renunciation of former allegiance.

**5. Aliens ⬤⟿65—Selective Service Act not intended to include aliens not eligible to naturalization, and induction into service did not create eligibility.**

The draft law did not contemplate the incorporation into the forces of the United States those not eligible to citizenship, and the fact that such may have been inducted into the service through voluntary enlistment or inadvertence of draft boards cannot affect the purpose of Congress to permit naturalization only of those previously eligible by the amendment of a naturalization act relating to those who had served in the United States forces during the World War.

On Rehearing.

**6. Aliens ⬤⟿65—Appropriation Act of 1919 did not authorize naturalization of Korean who had served in army.**

Provision of Sundry Civil Appropriation Act July 19, 1919, giving to any alien who served in the forces of the United States during the World War the benefits of Act June 29, 1906, § 4, subd. 7, as amended by Act May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352 [7]), which subdivision authorized naturalization of aliens who had served during the World War without many of the formalities required of other aliens, was not intended to and did not relax the provision of prior amendment, under which naturalization was limited to Filipinos and Porto Ricans in addition to free white persons and Africans, and therefore did not authorize the naturalization of a Korean who served in the army.

In the matter of the petition of Easurk Emsen Charr for naturalization. Petition denied.

Cameron L. Orr, of Kansas City, Mo., for petitioner.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

M. R. Bevington, of St. Louis, Mo., and C. A. Ramsey, of Kansas City, Mo., for the United States.

VAN VALKENBURGH, District Judge. The petitioner is a native of Korea, owing allegiance to and a subject of the Mikado of Japan, a resident of Parkville, Mo., as a student of Park College. He was drafted into the United States army, serving therein from April 15, 1918, to December 28, 1918, receiving an honorable discharge from such service. His service was at military training camps within the United States. His educational qualifications, character, and record of military service are good. His naturalization is not opposed on personal grounds, but upon the contention that all members of his race are barred from naturalization under the provisions of section 2169 of the Revised Statutes of the United States (Comp. St. § 4358). He seeks to be naturalized under the provisions of subdivision 7 of section 4 of the Act of June 29, 1906, as amended by the Act of May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352[7]), and by the subsequent Act of July 19, 1919 (41 Stat. 222). Section 2169, imposing limitations upon eligibility for naturalization, reads as follows:

"The provisions of this title [of naturalization] shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent."

The applicant is admittedly neither of African nativity nor of African descent. The question at issue is whether he is a white person within the meaning of this section, and, if not, whether he is still entitled to citizenship because of the alleged exceptions made by the acts of Congress to which reference has been made.

[1] The meaning of section 2169 has become so far clarified by late judicial decisions that we are confronted by no embarrassment in determining the question of color in so far as that controls. In ex parte Dow (D. C.) 211 Fed. 486, and In re Dow (D. C.) 213 Fed. 355, it was held that the words do not mean a person white in color, nor do they designate racial distinction, meaning Caucasian or Indo-European, but are to be construed rather as a geographical term, referring to the peoples who were commonly known in the United States as those inhabiting Europe, and whose descendants, at the time of the passage of the act of 1790 (1 Stat. 103), formed the inhabitants of the United States, excluding Africans. In those cases, a Syrian from the Lebanon district—that is to say, from that part of the Mediterranean coast in Asia occupied in ancient times by the Phœnicians—was denied admission to citizenship upon the ground that he was not a free white person within the meaning of section 2169. The holding in those cases was rejected by the Circuit Court of Appeals for the Fourth Circuit in the same entitled case. 226 Fed. 145, 140 C. C. A. 549. In accordance with numerous holdings the term includes, as commonly understood, all European races and those Caucasians belonging to the races around the Mediterranean Sea, whether they are considered as fair whites or dark whites, and though certain of the eastern and southern European races are technically classified as of Mongolian or Tartar origin. Generally

speaking, "free white persons" includes members of the white or Caucasian race as distinct from the black, red, yellow, and brown races.

Whether or not historically the term "Caucasian" is accurate as a designation of the white race, it is a term which appeals to common understanding and to that of the lawmakers with practical definiteness, and the term "white person" may now be said to have a well understood meaning. In the case at bar we are not troubled by close refinements of definition, either as to race, color, or geographical location. The petitioner is a Korean, admittedly of the Mongol family. Whatever their precise shade of color may be defined to be, they are confessedly not white persons, either in fact or in accordance with common understanding, and they are about as far removed from Europe and the Mediterranean Sea as could well be imagined. If, then, the applicant is eligible to be admitted to citizenship in this country, it must be because of the provisions of the amendatory acts to which reference has been made.

So much of subdivision 7 of section 4 of the Act of June 29, 1906, as amended by the Act of May 9, 1918, as is material to this discussion, reads as follows:

"Any native-born Filipino of the age of twenty-one years and upward who has declared his intention to become a citizen of the United States and who has enlisted or may hereafter enlist in the United States Navy or Marine Corps or the Naval Auxiliary Service, and who, after service of not less than three years, may be honorably discharged therefrom, or who may receive an ordinary discharge with recommendation for reenlistment; or any alien, or any Porto Rican not a citizen of the United States, of the age of twenty-one years and upward, who has enlisted or entered or may hereafter enlist in or enter the armies of the United States, either the regular or the volunteer forces, or the national army * * * may, on presentation of the required declaration of intention petition for naturalization without proof of the required five years' residence within the United States; * * * Any alien serving in the military or naval service of the United States during the time this country is engaged in the present war may file his petition for naturalization without making the preliminary declaration of intention and without proof of the required five years' residence within the United States; * * * and any alien, or any person owing permanent allegiance to the United States embraced within this subdivision, may file his petition for naturalization in the most convenient court without proof of residence within its jurisdiction, * * * provided he appears with his two witnesses before the appropriate representative of the Bureau of Naturalization and passes the preliminary examination hereby required before filing his petition for naturalization in the office of the clerk of the court."

Section 2 of the Act of May 9, 1918 (section 4352aa) provides that:

"All acts or parts of acts inconsistent with or repugnant to the provisions of this act are hereby repealed; but nothing in this act shall repeal or in any way enlarge section twenty-one hundred and sixty-nine of the Revised Statutes, except as specified in the seventh subdivision of this act and under the limitation therein defined. * * * That as to all aliens who, prior to January first, nineteen hundred, served in the armies of the United States and were honorably discharged therefrom, section twenty-one hundred and sixty-six of the Revised Statutes of the United States shall be and remain in full force and effect, anything in this act to the contrary notwithstanding."

[2] The purpose of this act is well understood. It was to reward those aliens who had entered the military or naval service of the United States, as therein described, by admitting them to citizenship without

many of the slow processes, formalties, and strictness of proofs which were rigidly provided and enforced under the law affecting naturalization as it existed then, and as it exists now. The amendments made were not to the title as a whole, but primarily to section 4 of the Act of June 29, 1906, 34 Stat. 596. This section deals, not with persons eligible to become naturalized, but with the procedure to be taken and the showing to be made by those elsewhere defined to be eligible. This in itself is significant in its bearing upon the specific interpretation we are required to make.

However, in the act of May 9, 1918, it was provided that any native-born Filipino of the age of 21 years, who has declared his intention to become a citizen of the United States, and any Porto Rican not a citizen of the United States of the age of 21 years and upward, who had enlisted, or might thereafter enlist, generally speaking, in the military or naval service of the United States, might become naturalized in the manner therein prescribed. It makes no other reference to the racial or geographical status of any person contemplated by the amendment. The act also provides that "any alien" who might thus enlist or enter the military or naval service of the United States may be naturalized in like manner. Section 2 of the amending act, as we have seen, expressly provides that—

"Nothing in this act shall repeal or in any way enlarge section twenty-one hundred and sixty-nine of the Revised Statutes except as specified in the seventh subdivision of this act and under the limitation therein defined."

The government contends that this limits the privilege to those races otherwise eligible to naturalization, while the petitioner claims that the privilege embraces all aliens of whatever race provided they have rendered the military or naval service specified.

[3] The question, in some of its aspects, at least, and in those which I believe control the decision in this case, is not a new one. Section 2166 of the Revised Statutes of 1878 was a provision of the same general purpose and import. Its scope was unlimited in terms; but standing, as it did, in the same title with section 2169, it was ruled to be limited by the sweeping provisions of the latter section. In re Buntaro Kumagai (D. C.) 163 Fed. 922. A statute of like import was passed by Congress, and approved July 26, 1894 (28 Stat. 124). A Japanese alien asked to be admitted as a citizen of the United States under the provisions of this act. The application was denied. Bessho v. United States, 178 Fed. 245, 101 C. C. A. 605.

[4] Incidentally it has been urged that section 2169 was repealed, by implication, by the act of June 29, 1906 (34 Stat. 596). The contention has uniformly been rejected, and, notably, in cases involving Filipinos. In re Alverto (D. C.) 198 Fed. 688; In re Rallos (D. C.) 241 Fed. 686; In re Lampitoe (D. C.) 232 Fed. 382; United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660. The act of June 29, 1906, provided that the naturalization laws shall apply to authorize the admission to citizenship of all persons not citizens who owe allegiance to the United States, and who may become residents of any state or organized territory of the United States, on certain conditions. This was done

to make possible the naturalization of citizens of the Philippine Islands and of Porto Rico, who were theretofore generally excluded because, first, the naturalization laws of the United States applied only to aliens, and, second, they required a renunciation of former allegiance. It was contended that this provision of the act of 1906 removed the inhabitants of those islands from the limitation of section 2169. A native of the Philippine Islands applied for citizenship upon that ground. Ethnologically he was found to be one-fourth white and three-fourths brown or Malay. His application was denied for the reason that he was not a white person, and section 2169 controlled and limited the provisions of the act of 1906 as part of the general naturalization statute of the United States. In re Alverto, supra.

It should be borne in mind that the policy of our law, from 1802 down to the present time, has had in view the prevention of all aliens, not free white persons, from becoming citizens. The first exception was introduced by the act of July 14, 1870 (Comp. St. § 4358), at which time persons of African nativity and African descent were included, in view, as has been stated, of the peculiar situation of inhabitants in this country of that race. The revisers of the laws of the United States, at the first session of the Forty-Third Congress from 1873 to 1874, inadvertently omitted the words "free white persons" from section 2169; but this was immediately corrected, upon discovery, by Act of February 18, 1875, entitled "An act to correct errors and to supply omissions in the Revised Statutes of the United States," and the language of that section was restored to its present reading. The repealing section of the act of 1906 did not include section 2169, and the present act of 1918 expressly preserves it in force, "except as specified in the seventh subdivision of this act and under the limitation therein defined." The history of legislation upon this subject convincingly demonstrates the purpose of Congress to limit applicants for naturalization to free white persons and those of African nativity and descent.

We have, then, to consider the meaning of the language last quoted. What are the specifications referred to in the seventh subdivision, and what is the limitation therein defined? As has been said, the only reference to race contained in that section was as to Filipinos and Porto Ricans. For this reason, it may well have been deemed necessary, or at least expedient, to reaffirm the binding force and effect of section 2169. It has already been shown that Filipinos, in certain cases, have been adjudged inadmissible to citizenship because of racial disqualification. Some citizens of Porto Rico may be conceived to present similar disabilities. Congress, in passing this law, must be presumed to have acted with knowledge of all previous legislation and of its interpretation by the courts. The exceptions referred to must have been the races especially mentioned in the seventh subdivision, and the limitation was the military or naval service performed. In other words, under the general law, neither a Filipino nor a Porto Rican could necessarily have been admitted to citizenship. Under this subdivision, he may be, irrespective of race, if he has performed the service specified.

If, as contended by the petitioner, the exception reserved was in-

tended to mean *any* alien who should perform military service, it is difficult to perceive why the provision as to the continuing force of section 2169 was necessary at all; the limitation of military or naval service being sufficient to preserve that section intact in all its general features. This view is corroborated and emphasized by the fact that, throughout the original title 30, Revised Statutes of 1878, the term "any alien" is used repeatedly without qualification, the limitation to free white persons and those of African nativity and descent being raised entirely from section 2169; and the same is true of section 2166 and other acts conferring special privileges upon soldiers and sailors. Moreover, as has been previously stated, the Act of May 9, 1918, was chiefly intended to modify section 4 of the Act of 1906 as to procedure merely, shortening the time and smoothing the way to citizenship. Section 2169 has to do only with racial qualification, and out of abundance of caution it was expressly reaffirmed.

[5] It may be added that the provisions of the draft law clearly did not contemplate the incorporation of those not eligible to citizenship into the land and naval forces of the United States. That such may have been inducted into the service through voluntary enlistment or inadvertence of draft boards cannot affect the purpose of Congress. It must be remembered that:

"Naturalization creates a political status which is entirely the result of legislation by Congress, and, in the case of a person not born a citizen, naturalization can be obtained only in the way in which Congress has provided that it shall be granted, and upon such showing of facts as Congress has determined must be set forth." In re Alverto (D. C.) 198 Fed. 688; In re Knight (D. C.) 171 Fed. 299.

The objection to this applicant is not founded upon any personal consideration. On the contrary, recognition of his educational qualifications and character is supplemented by appreciation of his military service. It may very well be conceded that that service should be appropriately rewarded, but the privilege of citizenship rests with Congress, and with Congress alone, and the courts have no power to alter or extend the provisions of law to that end.

The petition is accordingly denied.

## On Rehearing.

[6] On petition for rehearing the attention of the court has been urgently called to the provision of the subsequent Act of July 19, 1919, to which reference was made, but which was not discussed in brief or argument at the former hearing. The provision referred to reads as follows:

"Any person of foreign birth who served in the military or naval forces of the United States during the present war, after final examination and acceptance by the said military or naval authorities, and shall have been honorably discharged after such acceptance and service, shall have the benefits of the seventh subdivision of section 4 of the Act of June 29, 1906, Thirty-fourth Statutes at Large, part 1, page 596, as amended, and shall not be required to pay any fee therefor; and this provision shall continue for the period of one year after all of the American troops are returned to the United States."

Because of the importance of the question involved and the earnestness of counsel, the court has made further investigation of the proceedings in Congress attending this legislation, in order, if possible, to ascertain the intent and purpose of that body in view of the claimed ambiguity in the language employed. This enactment appears in the naturalization section of the Sundry Civil Act, Public No. 21, 66th Congress. It is not mentioned in the report on the bill, and a search of the Congressional Record discloses that it was not mentioned in any of the debates either in the House or Senate, and therefore there is nothing in the records of Congress to show the intent of Congress as to this particular section. It is worthy of note in this connection that a bill of similar purport, H. R. 6804, entitled "A bill to facilitate the naturalization of persons who served in the military or naval forces of the United States since April 6, 1917, who have been, or who may be, honorably discharged therefrom," introduced June 27, 1919, by Congressman Rogers, and referred to the committee on immigration and naturalization, failed to pass. It would seem, therefore, that this clause of the naturalization section of the Act approved July 19, 1919, was simply attached as a rider to an appropriation bill, and went through without scrutiny or debate by either house. It cannot, therefore, in the absence of language clearly expressing that purpose, be held to relax the provisions of the prior Act of May 9, 1918, which have been duly considered.

The court has also received a copy of the report of the Senate committee on immigration upon the Act of May 9, 1918, aforesaid. It contains this significant language:

"It [section 2 of the act] also declares that nothing in the act shall enlarge or repeal in any way section 2169 of the Revised Statutes, except as specified in the seventh subdivision and under the limitation therein defined. This means that Filipinos may be naturalized who are enlisted in the army or navy of the United States and are honorably discharged therefrom."

This confirms the purpose and intent of Congress as deduced and declared in the foregoing memorandum. The words "any person of foreign birth" occurring in the Act of July 19, supra, do not enlarge the word "alien" as contemplated by these acts, in view of their specific reservations. A reason for the later legislation, if one is necessary to be advanced, is found in the further limitation of the application of the provisions of section 7 to a period of one year after all the American troops are returned to the United States, which provision is not found in the earlier act.

For the foregoing reasons, I am constrained to adhere to the conclusion reached in my original opinion.