## In re GEE HOP.

(District Court, N. D. California. December 27, 1895.)

No. 11,200.

1. CHINAMAN—RIGHT TO NATURALIZATION.
   A native of China of the Mongolian race is not entitled to be admitted to citizenship.
2. SAME.
   A certificate of the naturalization of a Chinaman is void on its face.
8. SAME—EFFECT OF PASSPORT.
   A passport issued by the department of state is not evidence that the person to whom it was issued was a citizen of the United States.

H. S. Foote, U. S. Dist. Atty., and Bert Schlessinger, Asst. U. S. Dist. Atty.

Lyman I. Mowry, for Gee Hop.

MORROW, District Judge. A petition for a writ of habeas corpus was filed on behalf of Gee Hop, alleging that he was detained and restrained of his liberty on board the steamship City of Peking by the master thereof; that he has applied to the collector for the port of San Francisco to be permitted to land, but said application has been denied. He therefore prays for a writ of habeas corpus, that he may be restored to his liberty, and allowed to land and enter the United States. The petition and agreed statement of facts show that Gee Hop was naturalized as a citizen of the United States by the court of common pleas in and for the county of Camden, state of New Jersey, on the 8th day of May, 1890; that, thereafter, to wit, on the 12th day of May, 1890, he obtained from the department of state at Washington a passport as a citizen of the United States, and, armed with these documents, he departed from the United States upon a visit to China, and returned to the United States on September 16, 1895; that he demanded of the collector of the port of San Francisco that he be allowed to land from the steamship on which he had returned, and to enter into and remain in the United States, on the ground that he was and is a citizen of the United States; that he presented to said collector his certificate of naturalization, and the passport issued to him by the department of state, as evidence of his right to enter into and remain in the United States, but said collector refused, and still refuses, to permit said Gee Hop to enter or remain in the United States. The district attorney has filed an intervention, denying that Gee Hop has the right to enter this country. The special referee and examiner, to whom the matter was referred to ascertain and report the facts, recommends the remand of Gee Hop, for the reason that there is no law conferring the right of naturalization upon Mongolians or natives of China; that the judgment of the court of common pleas of the state of New Jersey, naturalizing said Gee Hop, is absolutely null and void, for want of jurisdiction; and that, therefore, Gee Hop is not a citizen of the United States, as claimed by him, and cannot be permitted to land in this country.

In this conclusion I entirely agree. The matter of naturalization is exclusively within the control of the government of the United States, and not of the states. Article 1, § 8, of the constitution of the United States provides that congress shall have power "to establish an uniform rule of naturalization." By section 2165 of the Revised Statutes, the power of naturalizing aliens is conferred upon the circuit or district courts of the United States, or a district or supreme court of the territories, or a court of record of any of the states having common-law jurisdiction and a seal and clerk. But, while courts of record of a state, having common-law jurisdiction and a clerk and seal, have the power to naturalize, this, obviously, must be done in conformity with the uniform laws promulgated by the congress of the United States. That congress has never contemplated or intended to confer the right of naturalization upon Mongolians, or natives of China, is palpable by a mere reference to the laws upon the subject of naturalization. Section 2169 of the Revised Statutes, under the title "Naturalization," reads:

"The provisions of this title shall apply to aliens [being free white persons, and to aliens] of African nativity, and to persons of African descent."

Mongolians, or persons belonging to the Chinese race, are not included in this act. This was the view held by Judge Sawyer, sitting on the circuit bench for this circuit (Ninth), in Re Ah Yup, 5 Sawy. 155, Fed. Cas. No. 104, where the subject was very learnedly and elaborately discussed and considered. He says, in summing up his conclusions:

"Thus, whatever latitudinarian construction might otherwise have been given to the term 'white person.' it is entirely clear that congress intended, by this legislation, to exclude Mongolians from the right of naturalization. I am therefore of the opinion that a native of China, of the Mongolian race, is not a white person, within the meaning of the act of congress."

But if there could be any question as to the meaning of the provision above referred to with reference to Mongolians, the matter is settled and concluded by the imperative and unmistakable language of the act of congress of May 6, 1882, which says:

"Hereafter no state court or court of the United States shall admit Chinese to citizenship."

That such is the law of the land and the policy of this country is explicitly recognized by article 4 of the convention between the United States of America and the empire of China, which was duly signed and ratified, and, on December 8, 1894, proclaimed by the president. This article provides:

"In pursuance of article 3 of the immigration treaty between the United States and China. signed at Peking on the 17th day of November, 1880 (the 15th day of the tenth month of Kwanghsii, sixth year), it is hereby understood and agreed that Chinese laborers or Chinese of any other class, either permanently or temporarily residing in the United States, shall have, for the protection of their persons and property, all rights that are given by the laws of the United States to citizens of the most favored nation, excepting the right to become naturalized citizens. * * *"

It is plain, therefore, that the court of common pleas of the state of New Jersey had no right or power to naturalize said Gee Hop,

and its proceedings and judgment, declaring him a citizen of the United States, are absolutely null and void, for want of jurisdiction, and cannot be recognized in this or any other court. Freem. Judgm. § 117. The certificate of naturalization, which the detained presents to this court as evidence of his status as a citizen, is void on its face. There are no presumptions in favor of a judgment, where the powers of the court are special (Dynes v. Hoover, 20 How. 65), or where the law is such that the court could not, under any circumstances, have jurisdiction (Withers v. Patterson, 27 Tex. 491; Freem. Judgm. § 120; Works, Jur. pp. 168, 169, § 26). As is tersely stated by the last writer, in his able work, "a void judgment is no judgment." See, also, Murray v. Surety Co., 70 Fed. 341, 346, a decision of the circuit court of appeals for this circuit (Ninth), and the cases there cited.

The passport issued by the department of state to Gee Hop, as a citizen of this country, does not avail him in this proceeding, nor give efficacy and validity to the void judgment of the state court of New Jersey. It is, at most, but prima facie evidence of the facts recited, and is not evidence in a court of justice that the person to whom it was given was a citizen of the United States. Urtetiqui v. D'Arcy, 9 Pet. 692. In that case, Mr. Justice Thompson used the following language respecting the legal effect of passports. He said:

"Upon the general and abstract question whether the passport, per se, was legal and competent evidence of the fact of citizenship, we are of opinion that it was not. There is no law of the United States in any manner regulating the issuing of passports, or directing upon what evidence it may be done, or declaring their legal effect. It is understood, as matter of practice, that some evidence of citizenship is required by the secretary of state before issuing a passport. This, however, is entirely discretionary with him. No inquiry is instituted by him to ascertain the fact of citizenship, or any proceedings had that will in any manner bear the character of a judicial inquiry. It is a document which, from its nature and object, is addressed to foreign powers, purporting only to be a request that the bearer of it may pass safely and freely, and is to be considered rather in the character of a political document, by which the bearer is recognized, in foreign countries, as an American citizen, and which, by usage and law of nations, is received as evidence of the fact. But this is a very different light from that in which it is to be viewed in a court of justice, where the inquiry is as to the fact of citizenship. It is a mere ex parte certificate; and if founded upon any evidence produced to the secretary of state, establishing the fact of citizenship, that evidence, if of a character admissible in a court of justice, ought to be produced upon the trial, as higher and better evidence of the fact."

While it is true that, since this decision was rendered (1835), congress, by the act of May 30, 1866, and reproduced in the Revised Statutes as sections 4075, 4076, 4077, and 4078, has provided for the granting and issuing of passports, yet these provisions do not alter, in the least, the legal effect of passports as stated by Mr. Justice Thompson. Indeed, section 4076 provides:

"No passport shall be granted or issued to or verified for any other persons than citizens of the United States."

The conclusion is inevitable, therefore, that, under any phase of the question as here presented, Gee Hop is not a citizen of the United

States, and the judgment of the court of common pleas for the county of Camden, state of New Jersey, was and is void. This being so, the detained, not coming within any of the privileged classes who are entitled to return or enter this country, must be remanded. The recommendation of the special referee is hereby confirmed, and Gee Hop ordered to be remanded.