[No. 4352.   Decided October 22, 1902.]

*In the Matter of the Application of* Takuji Yamashita
*for Admission to the Bar.*

JUDGMENT — COLLATERAL ATTACK.

A judgment of the superior court admitting a person of the Japanese race to citizenship, shows upon its face that the court was without authority, and such judgment may be attacked at any time and in any proceeding.

ATTORNEYS — ADMISSION OF ALIENS — CITIZENSHIP — ELIGIBILITY OF JAPANESE.

Under Laws 1895, p. 178, § 6, which provides that no person shall practice law in the state who is not a citizen of the United States, a Japanese is not entitled to admission to practice, since he is ineligible to citizenship, under Rev. St. U. S., § 2169, which restricts the right of naturalization "to aliens being free white persons and to aliens of African nativity and to persons of African descent."

*Application for Admission to the Bar.*

*Takuji Yamashita, pro se.*

*W. B. Stratton,* Attorney General, *E. W. Ross,* and *C. C. Dalton,* as *amici curiae.*

The opinion of the court was delivered by

Reavis, C. J.—Takuji Yamashita, a native of Japan, applies for admission as an attorney and counselor at law in the courts of this state.    He shows that he is over twenty-one years of age, has been a resident of this state for more than one year, and that he has the requisite learning and ability qualifying him for admission.    The law relating to the qualifications and admission of attorneys and counselors at law is found in the act of March 19, 1895 (Laws 1895, p. 178), together with the amendment in the act of February 16, 1897 (Laws 1897, p. 12).    The law

of 1895 made no provision for admission without an examination. Sections 2 and 3 of the act provided for holding regular examinations for admission, but § 6 of the act declared: "No person shall practice as an attorney and counselor at law in any court of this state who does not reside in the state, or who is not a citizen of the United States." In the act of 1897, § 4 of the former act is so amended in substance as to provide for the admission of attorneys from sister states, upon satisfactory evidence of qualifications, without examination. The amendatory act does not affect § 6 of the original act, which, it may be observed, has been the law since 1881. It is apparent, therefore, that, to entitle the applicant to admission, he must be a citizen of the United States. The qualifications required for admission to the bar are prescribed by law, and they are exclusively within the discretion and policy of the state. One of the conditions required for the applicant is that he must be a citizen of the United States. It is shown by exemplification of the record that an order was entered admitting applicant to citizenship in the superior court of Pierce county on the 14th of May, 1902. It is also urged that such superior court was one of competent jurisdiction, and therefore its judgment must be final, and cannot be questioned here. The record of naturalization shows that the applicant is a native of Japan, and that he renounces allegiance as a subject of the Mikado. The naturalization law requires the applicant to declare on oath that he absolutely and entirely renounces and abjures all allegiance and fidelity to every prince, potentate, state, or sovereignty, and particularly, by name, to the prince, potentate, state, or sovereign of which he was before a citizen or subject (Rev. St. U. S., § 2165, subd. 2), and the proceedings must be recorded by the clerk of the court. Thus the transcript of the order admitting him to citizen-

ship shows that he is of the Japanese race. The judgment of the superior court, if acting within its jurisdiction, is conclusive; but, if the judgment upon its face shows that the court was without authority to pronounce the judgment, the determination is void and must be disregarded. A judgment void upon its face may be attacked at any time and in any proceeding, and the same may be disregarded. *Savage v. Sternberg,* 19 Wash. 679 (54 Pac. 611, 67 Am. St. Rep. 751). Also, as pertinent and relating to such proceedings in naturalization, see *In re Gee Hop,* 71 Fed. 274; *In re Hong Yen Chang,* 84 Cal. 163 (24 Pac. 156).

The question presented is whether one of the Japanese race is eligible under the naturalization laws, for admission to citizenship. The federal constitution confers plenary power upon congress to prescribe the qualifications and conditions for naturalization. All the acts of congress relating to the naturalization of aliens, commencing with that of April 14, 1802, to the Revised Statutes, contain the provision that "any alien being a free white person may be admitted to be a citizen," etc. After the adoption of the 13th and 14th amendments to the federal constitution, and in the act of July 14, 1870, it was enacted by congress "that the naturalization laws are hereby extended to aliens of African nativity and to persons of African descent." 16 St. at Large, 256, § 7. This was afterwards revised, and placed in the Revised Statutes,—§ 2169 (see 18 St. at Large, 318),—so as to read, "The provisions of this title shall apply to aliens being free white persons and to aliens of African nativity and to persons of African descent." And this is the existing law. It is plain that the two races mentioned are now eligible to citizenship under the general naturalization laws; that is, white persons and persons of African (negro) descent and nativity.

It is clear that within the meaning of these words the applicant is ineligible. When the naturalization law was enacted the word "white" applied to race, commonly referred to the Caucasian race. This is well stated in the case of *In re Ah Yup,* 5 Sawy. 155:

"Webster in his dictionary says: 'The common classification is that of Blumenbach, who makes five. 1. The Caucasian, or white race, to which belong the greater part of the European nations and those of Western Asia; 2. The Mongolian, or yellow race, occupying Tartary, China, Japan, etc.; 3. The Ethiopian or negro (black) race, occupying all Africa, except the north; 4. The American, or red race, containing the Indians of North and South America; and 5. The Malay, or brown race, occupying the islands of the Indian Archipelago,' etc. This division was adopted from Buffon, with some changes in names, and is founded on the combined characteristics of complexion, hair and skull. Linnaeus makes four divisions, founded on the color of the skin: '1. European, whitish; 2. American, coppery; 3. Asiatic, tawny; and, 4. African, black.' Cuvier makes three: Caucasian, Mongol and Negro. Others make many more, but no one includes the white, or Caucasian, with the Mongolian or yellow race; and no one of those classifications recognizing color as one of the distinguishing characteristics includes the Mongolian in the white or whitish race.' (See New American Cyclopedia, title 'Ethnology.')"

The courts, federal and state, have uniformly determined that Chinese are not eligible to naturalization, because not white persons. In 1880 it was determined that a native of British Columbia, half Indian and half white, could not be naturalized. *In re Camille,* 6 Fed. 256. In *In re Po,* 28 N. Y. Supp. 383, a native of British Burmah was denied admission. In *In re Kanaka Nian,* a Hawaiian, was denied naturalization. 6 Utah, 659 (21 Pac. 993, 4 L. R. A. 726). In *In re Saito,* 62 Fed. 126, the federal circuit court adjudged that a native of Japan

was of the Mongolian race, and therefore not eligible to naturalization.

But the applicant earnestly urges that the act of congress specially excluding the Chinese from naturalization implies, when considered with reference to our modern treaties with the empire of Japan, that the Japanese were excepted from the general exclusion of the Mongolian race. He also commends the reasoning in the case of *In re Rodriguez*, 81 Fed. 337, as persuasive to a more liberal construction in favor of the Japanese. In that case a native of Mexico, of undefined blood and race, and whose ancestors had for centuries been habitants of Mexico, was naturalized. But such decision was largely controlled by the various treaties with Mexico, and the fact that thousands of Mexicans, without regard to race or color, had been collectively naturalized as citizens of the United States. It is true, the learned judge, in the course of his opinion, suggests other and different views of the meaning of the classification by color contained in the naturalization laws, from those taken by the other authorities heretofore mentioned; but he also seems to concede that the Mongolian race is clearly excluded. It is likewise true that congress has several times collectively conferred citizenship upon bodies of people without reference to race, but the reasons therefor in each instance were plainly special, and such acts cannot be extended beyond the particular instances. The general law, with the single extension made to the African or negro race, has been confined to free white aliens. The law seems to base the classification upon ethnological and racial considerations, rather than in any national distinctions. Whether the classification according to color is technically scientific or natural is not a proper subject of inquiry here. From its existence co-extensively

with the formation of the American republic, it must be taken to express a settled national will.

The applicant cannot be admitted because he is not a citizen of the United States.

DUNBAR, FULLERTON, ANDERS and MOUNT, JJ., concur.