[Sac. No. 3249. In Bank.—July 26, 1923.]

ICHIZO SATO, Appellant, v. HARRY W. HALL, Clerk of the County of Sacramento, Respondent.

[1] NATURALIZATION — MEMBER OF YELLOW RACE—VOID JUDGMENT—COLLATERAL ATTACK.—An order of the United States district court admitting a Japanese to citizenship is void where it shows on its face that the party is a member of a yellow race, and the judgment is subject to collateral attack.

[2] ID.—COURTS—JUDGMENTS—SETTING ASIDE.—A state court has the power to declare void a certificate of naturalization issued by a federal court, where it is void on its face.

[3] ID.—JURISDICTION OF COURTS.—Jurisdiction to naturalize aliens as citizens of the United States is conferred alike upon federal and state courts.

[4] ID.—VOID JUDGMENTS.—The rule that a judgment which shows on its face that it is invalid may be assailed in any court is applicable to judgments rendered by federal courts.

[5] ID.—NATIVE OF JAPAN—SERVICE IN WORLD WAR—INELIGIBILITY TO CITIZENSHIP—ACT OF 1918.—A Japanese, who is a member of the yellow race, is not entitled to naturalization by reason of service

---

2. Power of state court to cancel certificate of naturalization, note, **Ann. Cas.** 1914B, 229.

in the United States army in the World War, under subdivision 7 of section 4 of the act of Congress of May 9, 1918 (40 Stats. at Large, 542), which provides that "any alien" who served in the army or navy during such war is entitled to naturalization.

[6] ID.—CONSTRUCTION OF ACT OF 1918.—The term "any alien" used in the seventh subdivision of section 4 of the act of May 9, 1918 (40 Stats. at Large, 542), standing by itself is broad enough to include a member of the yellow race; but as this term has been used in prior acts of Congress it must be assumed that Congress, in passing this law, acted with knowledge of all previous legislation and of its interpretation by the courts, and under this construction a member of the yellow race would not be included.

[7] STATUTORY CONSTRUCTION—ACT OF CONGRESS—RESORT TO DEBATES AND DISCUSSIONS.—If an act of Congress is ambiguous, in order to ascertain the intention of Congress, courts may look to the debates and discussions attending the passage of the act.

[8] ID.—ACT OF CONGRESS OF JULY 19, 1919—LEGISLATIVE INTENT.— The act of July 19, 1919 (41 Stats. at Large, 222), providing that any person of foreign birth who served in the military or naval forces of the United States during the World War, etc., and shall have been honorably discharged, shall have the benefits of the seventh subdivision of section 4 of the act of June 29, 1906 (34 Stats. at Large, pt. 1, p. 596), as amended, does not express a different legislative intent from that of the previous acts.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Williams & Fenstermacher and Albert H. Elliott for Appellant.

J. M. Inman for Respondent.

KERRIGAN, J.—Petitioner appeals from a judgment of the superior court refusing to issue a writ of mandate to compel the defendant, the county clerk of Sacramento County, to place petitioner's name on the register of voters.

On January 21, 1919, petitioner was admitted to citizenship by the United States district court of the territory of Hawaii, and a certificate of citizenship was thereupon issued to him. This certificate recites that he is a member of the yellow race, and that at the time of his admission he was a subject of the emperor of Japan. Petitioner presented his

certificate to defendant, and demanded that his name be placed on the register in order to qualify him to vote. The clerk declined to accede to this demand, and pleads as a justification for his action that members of the yellow race are not entitled to naturalization, and that the order admitting petitioner to citizenship is void on its face.

[1] The appellant contends that the order admitting him to citizenship is a final judgment of a court of competent jurisdiction, and that this judgment is conclusive as against collateral attack.

This position is untenable. The judgment or certificate shows that the petitioner is a member of a yellow race, and this showing renders the judgment void unless its integrity is preserved by some one of the acts to be hereafter noted. If petitioner were ineligible to citizenship, and this ineligibility appeared upon the face of the judgment of the court admitting him to citizenship, that court was without jurisdiction and its judgment was void.

In *Yamashita* v. *Hinkle,* 260 U. S. 199 [67 L. Ed. 209, 43 Sup. Ct. Rep. 69], recently decided, certificates of naturalization were issued to two Japanese by the superior court of the state of Washington prior to 1906. The Secretary of State of the state of Washington refused to receive and file articles of incorporation executed by the two Japanese upon the ground that they were not at the time of their naturalization and never had been entitled to naturalization under the laws of the United States, and therefore, were not qualified to form the corporation proposed. The supreme court of the state refused a writ of *mandamus* to compel the Secretary of State to issue and file the articles of incorporation, and the case was taken by a writ of *certiorari* to the supreme court of the United States, where Mr. Justice Sutherland, speaking for the court, said, ''Upon the authority of *Takao Ozawa* v. *United States, supra,* (260 U. S. 178 [67 L. Ed. 199, 43 Sup. Ct. Rep. 65]), we must hold that the petitioners were not eligible to naturalization, and as this ineligibility appeared upon the face of the judgment of the superior court, admitting petitioners to citizenship, that court was without jurisdiction and its judgment was void. (*In re Gee Hop* (D. C.), 71 Fed. 274; *In re Yamashita,* 30 Wash. 234 [70 Pac. 482].)''

[2]   Petitioner's next contention is that, assuming that a
federal court can set aside as void a certificate of naturaliza-
tion issued by a state court, there are no cases in which a
state court has declared void any certificate of naturalization
issued by a federal court.

This contention is also without merit.   [3]   Jurisdiction
to naturalize aliens as citizens of the United States is con-
ferred alike upon federal and state courts (Act of June 29,
1906, sec. 3; 34 Stats. at Large, 596 [Fed. Stats. Ann., 1909
Supp., p. 365; U. S. Comp. Stats., sec. 4351]), so we cannot
see that it makes any difference whether it is a federal or a
state court which issues the void certificate.   In either case,
if the certificate is void no rights are created under it, and
no one is obliged to recognize it.   It is true that the matter
of naturalization is exclusively within the control of the
government of the United States, but in determining whether
or not a state officer has acted properly in refusing to recog-
nize a certificate of naturalization, alleged to be void upon
its face, the state court must of necessity inquire whether
the court issuing the certificate had jurisdiction.   [4]   We
therefore hold that the rule that a judgment which shows
on its face that it is invalid may be assailed in any court
is applicable to judgments rendered by federal courts.

[5]   We then come to the question of whether petitioner
is entitled under the general naturalization laws to the privi-
lege of citizenship.

On May 9, 1918  (40 Stats. at Large, 542 [Fed. Stats.
Ann., 1918 Supp., p. 488; U. S. Comp. Stats. (Supp. 1919),
sec. 4352]), Congress amended the naturalization laws by
adding seven new subdivisions to section 4 of the Naturali-
zation Act of 1906.   This act of June 29, 1906, entitled "An
act to establish a Bureau of Immigration and Naturaliza-
tion, and to provide for a uniform rule for the naturaliza-
tion of aliens throughout the United States," consists of
thirty-one sections, and deals primarily with the subject of
procedure, and it did not change the fundamental princi-
ples of existing law governing in such matters (*Ozawa* v.
*United States, supra*).   We will quote that portion of the
seventh subdivision of section 4 of the act of 1906, as
amended by the act of 1918, pertinent to our inquiry:

"Any native-born Filipino of the age of twenty-one years
and upward who has declared his intention to become a

citizen of the United States and who has enlisted or may hereafter enlist in the United States Navy or Marine Corps or the Naval Auxiliary Service, and who, after service of not less than three years, may be honorably discharged therefrom, or who may receive an ordinary discharge with recommendation for re-enlistment; or any alien, or any Porto Rican not a citizen of the United States, of the age of twenty-one years and upward, who has enlisted or entered or may hereafter enlist in or enter the armies of the United States, either the Regular or the Voluntary Forces, or the National Army . . . may, on presentation of the required declaration of intention, petition for naturalization without proof of the required five years' residence within the United States; . . . Any alien serving in the military or naval service of the United States during the time this country is engaged in the present war may file his petition for naturalization without making the preliminary declaration of intention and without proof of the required five years' residence within the United States; . . . and any alien, or any person owing permanent allegiance to the United States embraced within this subdivision, may file his petition for naturalization in the most convenient court without proof of residence within its jurisdiction, . . . provided he appears with his two witnesses before the appropriate representative of the Bureau of Naturalization and passes the preliminary examination hereby required before filing his petition for naturalization in the office of the clerk of the court, . . . ''

Section 2 of the act of May 9, 1918 (40 Stat. 547), which we will hereafter refer to as section 2, provides that:

''All acts or parts of acts inconsistent with or repugnant to the provisions of this act are hereby repealed; but nothing in this act shall repeal or in any way enlarge section twenty-one hundred and sixty-nine of the Revised Statutes, except as specified in the seventh subdivision of this act and under the limitation therein defined. . . . ''

Section 2169 of the Revised Statutes [5 Fed. Stats. Ann. 207; U. S. Comp. Stats., sec. 4358], referred to in section 2 of the act of May 9, 1918, reads as follows: ''The provisions of this Title shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent.'' In all of the naturalization acts

from 1790 to 1906 the privilege of naturalization was confined to white persons (with the addition in 1870 of those of African nativity and descent), although the exact wording of the various statutes was not always the same. (See *Ozawa* v. *United States,* 260 U. S. 178 [67 L. Ed. 199, 43 Sup. Ct. Rep. 65].)

[6] The term "any alien" used in the seventh subdivision of the act of 1918, standing by itself, would certainly be broad enough to include the petitioner; but as this term had been used in prior acts we must assume that Congress, in passing this law, acted with knowledge of all previous legislation and of its interpretation by the courts. We will refer to two acts of Congress granting the privilege of naturalization to aliens who had engaged in military service. The first of these, the act of July 17, 1862 (12 Stats. at Large, 597), carried into the Revised Statutes as section 2166, and repealed by the act of May 9, 1918, read as follows:

"Any alien, of the age of twenty-one years and upwards, who has enlisted, or may enlist, in the armies of the United States, either the regular or the volunteer forces, and has been, or may be hereafter, honorably discharged, shall be admitted to become a citizen of the United States, upon his petition, without any previous declaration of his intention to become such; . . . "

In 1908 a Japanese made application under this section and it was held that section 2169 was controlling, and limited the privilege of naturalization to white persons and to those of African nativity or descent, and that it did not extend the right of naturalization to a person of the Japanese race, although having an honorable discharge. (*In re Buntaro Kumagai,* 163 Fed. 922.)

A statute of like import was passed by Congress and approved July 26, 1894. (28 Stats. at Large, 123, 124.) In *Bessho* v. *United States,* 178 Fed. 245 [101 C. C. A. 605], the circuit court of appeals had before it this act of 1894, authorizing the naturalization of "any alien" twenty-one years or more of age who had served in the United States navy or marine corps, as therein provided. The court held that this act was limited by the provisions of section 2169 of the Revised Statutes, in view of the fact that in section 26 of the General Naturalization Act of 1906 [Fed. Stats. Ann.,

1909 Supp., p. 375; U. S. Comp. Stats., sec. 4381], Congress expressly repealed a number of sections of the act of 1873 (as amended in 1875), but it did not mention as repealed section 2169, above quoted. The court construed this omission as a legislative implication that section 2169 was to continue as the law. This was in 1906, and, of course, long after the enactment of the statute of 1894, under which Bessho claimed the right of naturalization. The court denied the petition upon the ground that, although he was a Japanese subject who came within the terms of the act of 1894 as having served in the navy of the United States, he was not entitled to naturalization because he was a member of a race other than the white or black races.

We have, then, this highly suggestive condition: The acts of 1862 (sec. 2166, Rev. Stats.), 1894, and 1918 all use the common term "any alien," and all of them refer to aliens who have served in the army or navy. We have shown that under the acts of 1862 and of 1894 there is no question that the words "any alien" mean any alien of the white or black races. The matter stood in this shape when Congress enacted the act of 1918. Since we know that these words in the earlier acts are limited to aliens of the white and black races, we are compelled to assume with equal certainty that the words are used throughout in the same sense. Congress cannot have deliberately enacted the statute of 1918 with the expectation that a new and special meaning should be accorded to these words. If these decisions were, as asserted by petitioner, erroneous, it seems to us all the more reason why Congress would have used in the act of 1918 some phrase other than "any alien" in order to show that it disapproved of these decisions; but as Congress did not do so, we must presume that it used the term "any alien" in the sense in which it had been judicially interpreted.

This brings us to a consideration of the meaning of section 2 of the act of 1918, to which we have referred above, and which provides that nothing in that act shall repeal or in any way enlarge section 2169 of the Revised Statutes, except as specified in the seventh subdivision of the act and under the limitation therein defined. The clear implication is that section 2169 is not to be repealed, except as it is enlarged by the specifications and limitations contained in

the seventh subdivision. In the seventh subdivision, Filipinos, who are neither aliens nor citizens (*In re Alverto* (D. C.), 198 Fed. 688), and those Porto Ricans not citizens, are given the privilege of citizenship. Thus we find an enlargement of section 2169, extending the right to persons who are neither aliens nor white persons. Petitioner, in order to rebut the inference that Congress intended to make Filipino and Porto Rican soldiers and sailors the only ones excepted from the restrictions of section 2169 of the Revised Statutes, contends that since the expression "any alien" did not include Filipinos and Porto Ricans, it was necessary for Congress to specifically mention them in subdivision 7, in order that they would share the same privileges as "any alien."

This argument is not sound. If Congress mentioned Filipinos and Porto Ricans in subdivision 7 merely to put them on an equality with "any alien," why were the provisions regarding their naturalization stricter than those terms upon which "any alien" could be naturalized? It will be noticed that, in order to come within the purview of the act of 1918, both Filipinos and Porto Ricans must have declared their intention to become citizens of the United States, and Filipinos must also have had three years' military service, while "any alien serving in the military or naval service of the United States during the time this country is engaged in the present war may file his petition for naturalization without making the preliminary declaration of intention and without proof of the required five years' residence within the United States."

Further, if petitioner's interpretation is correct, it was only necessary for Congress to say in section 2 *"That all acts and parts of acts inconsistent with or repugnant to the provisions of this act are hereby repealed"*; and section 2169 would be repealed in so far as "aliens, Filipinos, and Porto Ricans" who had seen the required military service were concerned. But when Congress continued and said, *"but nothing in this act shall repeal or in any way enlarge section 2169, R. S., except as specified in the seventh subdivision of this act and under the limitation therein defined,"* it is clear that section 2169 of the Revised Statutes is to stand, except as to Filipinos and Porto Ricans. (Italics ours.) In short, after having said that section 2169 was not to be re-

pealed, it was necessary for Congress to add, "except," etc., because as a matter fact there were two classes mentioned in subdivision 7, namely, Filipinos and Porto Ricans, who were neither free white persons nor of African descent or nativity.

We are not without authority for this construction of the act of 1918. In the *Petition of Charr* (D. C.), 273 Fed. 207, recently decided, it was held that petitioner, a Korean, a subject of Japan, who had been in the military service, was not entitled to citizenship under the act of 1918. Referring to the effect of section 2, the court said: "The exceptions referred to must have been the races especially mentioned in the seventh subdivision, and the limitation was the military or naval service performed. In other words, under the general law, neither a Filipino nor a Porto Rican could necessarily have been admitted to citizenship. Under this subdivision, he may be, irrespective of race, if he has performed the service specified." In *In re Para* (D. C.), 269 Fed. 643, the court reached the same result, denying certificates to a South American Indian and to a Japanese, who had served in our military forces during the late war. In the course of its opinion, the court said: "If the words 'any alien' are to be taken literally, not only would a meaning be given wholly contrary to existing judicial interpretation, but all the definitions of section 2169 would be rendered meaningless, and even Chinese who had served in the army could be naturalized, in spite of the express language to the contrary. However worthy may have been the military services of the petitioners, I can find no warrant in the statutes for their naturalization. The words 'any alien,' appearing in the act of May 9, 1918, are subject to prior judicial interpretation, and in my opinion embrace only such aliens as could theretofore have been admitted to citizenship, and merely provide more expeditious and favorable terms of admission than before existed."

In this contention, it is significant to note that in *Ozawa* v. *United States, supra,* in which it was held that one of the Japanese race and born in Japan was not eligible to citizenship under our naturalization laws, one of the questions certified to the supreme court by the circuit court of appeals was, "If said act of June 29, 1906, is limited by section 2169, and naturalization is limited to aliens being free

white persons and to aliens of African nativity and to persons of African descent, is one of the Japanese race, born in Japan, under any circumstances eligible to naturalization?'' The answer given to this question by the supreme court of the United States was, No. In view of the fact that many courts were being called upon to decide the status of Japanese who had seen military service, we are convinced that the supreme court had such Japanese in mind when it said that under no conditions could a Japanese born in Japan be eligible to naturalization.

[7] If the act of 1918 is ambiguous, then according to well-recognized principles of statutory interpretation, in order to ascertain the intention of Congress, we may look to the debates and discussions attending the passing of the act. (*Church of the Holy Trinity* v. *United States,* 143 U. S. 457 [36 L. Ed. 226, 12 Sup. Ct. Rep. 511] ; *Heydenfeldt* v. *Daney Gold etc. Co.,* 93 U. S. 634 [23 L. Ed. 995, see, also, Rose's U. S. Notes].) A careful reading of the Congressional Record will show that the committee which reported the bill to Congress, in response to questions from the floor, repeatedly said that the act would not apply to those not capable of citizenship. We will quote a paragraph from a speech in Congress by one of the framers of the bill. He said in part: ''The seventh subdivision has been prepared for the purpose of unifying the rule of exemptions extended to certain aliens, who have received military training in armies of the United States and in the Philippine Islands, as well as those serving on vessels of the United States Government and the American Merchant Marine. It also makes the first enlargement ever authorized of the provisions of section 2169, by allowing Filipinos who have served in the United States Navy or Marine Corps or the Naval Auxiliary Service, and have been honorably discharged therefrom after the term of enlistment specified, to petition for naturalization under the conditions and limitations as defined in the seventh subdivision, and includes all those who are at present in the military service of the United States, whether they have declared their intention or not. . . . In the general repealing portion of this section the provision as to the effect of this act upon section 2169 of the Revised Statutes is clearly shown not to enlarge it in any way except as to the Filipino, and only in those cases of

Filipinos who have performed the service in the Navy as defined in subdivision 7." (Congressional Record, May 3, 1918, pp. 6022, 6023.) It appears also from the discussion before the committee which drafted the amendment that it was clearly intended to give the amendment the construction herein reached.

[8] Our attention has been called to the act of July 19, 1919 (41 Stats. at Large, 222), which reads as follows:

"Any person of foreign birth who served in the military or naval forces of the United States during the present war, after final examination and acceptance by the said military or naval authorities, and shall have been honorably discharged after such acceptance and service, shall have the benefits of the seventh subdivision of section four of the act of June 29th, 1906 (34 Stats. at Large, pt. 1, p. 596), as amended, and shall not be required to pay any fee therefor; and this provision shall continue for the period of one year after all of the American troops are returned to the United States."

It will be noticed that petitioner's naturalization preceded the enactment of this statute, but it is claimed that this statute being the latest legislative expression of this subject matter, evinces a congressional intent to include all aliens, soldiers, and sailors who complied with the terms of the statute. This act appears to extend the period of six months specified in said subdivision 7 to one year, to extend its provisions to aliens serving during the present war to one year after their discharge, and to dispense with the payment by them of any fee. It makes no other changes. In the *Petition of Charr, supra,* in speaking of the act of 1919, the court said:

"Because of the importance of the question involved and the earnestness of counsel, the court has made further investigation of the proceedings in Congress attending this legislation, in order, if possible, to ascertain the intent and purpose of that body in view of the claimed ambiguity in the language employed. This enactment appears in the naturalization section of the Sundry Civil Act, Public No. 21, 66th Congress. It is not mentioned in the report on the bill, and a search of the Congressional Record discloses that it was not mentioned in any of the debates, either in the House or Senate, and therefore there is nothing in the records of

Congress to show the intent of Congress as to this particular section. . . . It would seem, therefore, that this clause of the naturalization section of the Act approved July 19, 1919, was simply attached as a rider to an appropriation bill, and went through without scrutiny or debate by either house. It cannot, therefore, in the absence of language clearly expressing that purpose, be held to relax the provisions of the prior act of May 9, 1918, which have been duly considered.''

In view of the fact that the discussions preceding the enactment of the act of 1918 emphatically show that Congress did not intend to include within the scope of that act persons not otherwise entitled to citizenship, we cannot believe that it would have changed this policy after the war was over, without mature consideration. Therefore, we do not regard the act of 1919 as expressing a different legislative intent from that of the previous acts.

As was said in a recent case, it may be conceded that the services rendered by the petitioner should be appropriately rewarded; but the privilege of citizenship resting with Congress, and with Congress alone, the courts have no power to alter or extend the provisions of law to that end. We are constrained to hold that the petition was properly denied and, accordingly, the judgment of the trial court is affirmed.

Seawell, J., Waste, J., Myers, J., Lawlor, J., and Richards, J., *pro tem.*, concurred.